**NORTH RIDGE COUNTRY CLUB,**
**Petitioner–Appellee,**

v.

**COMMISSIONER INTERNAL REVE-**
**NUE SERVICE,**
**Respondent–Appellant.**

No. 88–7062.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 1989.

Decided June 6, 1989.

Kenneth L. Greene, Asst. Atty. Gen., Tax Div., Washington, D.C., for respondent-appellant.

Alvin R. Wohl and Michael P. Casterton, Sacramento, Cal., for petitioner-appellee.

Before CANBY, THOMPSON and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

## OVERVIEW

The Commissioner of Internal Revenue ("the Commissioner") appeals a tax court decision rejecting its deficiency assessment of North Ridge Country Club's ("the Club") taxable income for 1979. A social club such as the Club is taxed on non-member income. I.R.C. §§ 501(c)(7), 512(a)(3).[1] The Club's income from a non-member activity exceeded the direct costs of conducting the activity, but the Club reported a tax loss after considering indirect costs such as overhead. The tax court concluded that the loss was properly deductible under section 512(a)(3)(A) of the Tax Code, and could offset the gains from other non-member activities. *North Ridge Country Club v. C.I.R.*, 89 T.C. 563 (1987). The Commissioner appeals. We reverse.

## FACTS AND PROCEEDINGS

The facts are undisputed. The Club operates a golf club, a restaurant and bar, and other facilities for the benefit of members and guests. In 1979, the year at issue, the Club obtained revenues from membership dues and fees, but also from three non-member sources.[2] One source of non-member revenue was interest from a savings account. Another source was non-member golf tournaments, in which the Club charged a variety of user fees and produced food and bar revenues from obligatory post-tournament banquets. A third source was food and bar earnings from non-member banquets unrelated to golf tournaments.

At non-member tournaments and banquets, the prices charged to non-members were higher than would be charged to members. The prices were competitive yet designed to maximize revenue. In calculating the profitability of non-member activities, the Club only took into account "direct expenses," i.e. those which would not have been incurred but for the activity (e.g. additional labor costs and cost of goods sold). Based on such an analysis, 1979 produced overall non-member profits. The Club sought to generate profits from non-member activities to produce cash flow and contribute to its "indirect expenses," i.e. fixed or quasi-fixed expenses such as overhead.[3]

For tax purposes, however, the Club did take into account indirect expenses in determining the profitability of its non-member activities. This method of computation produced a loss from the Club's food and bar non-member activities in 1979. Allowing the loss to offset gains from the other non-member activities produced an overall loss.

The Club qualifies as a social club under the Tax Code, entitling it to an exemption from taxation of income. § 501(c)(7). The

---

**1.** All statutory references are to the Internal Revenue Code, 26 U.S.C., as in effect in 1979, unless otherwise noted.

**2.** The tax court grouped all non-member income into three sources, and the parties do not oppose this categorization for purposes of this appeal.

**3.** The terms "indirect costs" and "direct costs" are used only in the sense defined in the text. The parties have stipulated that even "indirect costs" as used here are "directly connected" with the production of the Club's gross income for purposes of determining taxable income under section 512(a)(3)(A).

exemption does not apply to income from non-member sources. § 512(a)(3)(B). But since in 1979 the Club's tax computations revealed losses in non-member activities, the Club reported no tax liability from non-member income in that year. According to the Commissioner, the Club reported no liability for non-member income for 1974 to 1978 for the same reasons.

The Commissioner assessed a deficiency for 1979, believing the Club could only deduct expenses for each non-member activity to the extent of that activity's gains, i.e. it could not deduct losses. The Commissioner reasoned losses are non-deductible unless incurred in a trade or business entered into with a profit motive, and that here the profit motive was lacking. The Club sought judicial review.

The tax court rejected the Commissioner's position. It found that the Club had the required profit motive to deduct its losses, and concluded the food and bar losses properly offset the net gains from the other non-member revenue sources. The Commissioner timely appealed within the ninety day statutory period. § 7483. The National Club Association filed an amicus brief in support of the Club.

## DISCUSSION

The narrow question before us is whether the Club could properly deduct losses [4] incurred in conducting non-member activities.[5]

---

**4.** We use the term "losses" to mean expenses in excess of income.

**5.** The Commissioner concedes that, if the losses from one non-member source, such as food and bar activity, were properly deductible, the Club could apply them to offset the gains from another non-member source. Appellant's Opening Brief at 9, n. 7.

**6.** In 1979, section 512(a) provided in part:

*(a) Definition* For purposes of this title

*(1) General rule* Except as otherwise provided in this subsection, the term "unrelated business taxable income" means the gross income derived by any organization from any unrelated trade or business ... regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business....

In 1969, Congress decided to tax the "unrelated business income" of certain tax exempt organizations. § 512(a).[6] As applied to social clubs, income from member sources remained tax exempt ("exempt function income") but income from non-member sources did not. § 512(a)(3)(B). The legislative history behind § 512(a) reveals Congress believed that a Club's income from members is properly exempt, since the members would not suffer tax consequences if they spent their income on recreation independent of a social club. S.Rep. No. 552 91st Cong., 2nd Sess. (1969), 1969–3 C.B. 423, 469–70, *reprinted in* 1969 U.S.Code Cong. & Admin.News 1645, 2027, 2100. However, if the club's non-member income would likewise be exempt from taxation, it could subsidize the members' recreation. The members would then improperly receive a tax-free subsidy:

> Since the tax exemption for social clubs and other groups is designed to allow individuals to join together to provide recreational or social facilities or other benefits on a mutual basis, without tax consequences, the tax exemption operates properly only when the sources of income ... are limited to receipts from the membership. Under such circumstances, the individual is in substantially the same position as if he had spent his income on pleasure or recreation (or other benefits) without the intervening separate organization.... For example, if a

---

....

*(3) Special rules applicable to organizations described in section 501(c)(7)* [social clubs]

*(A) General rule* In the case of [a social club], the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income),....

*(B) Exempt function income* For purposes of subparagraph (A), the term "exempt function income" means the gross income from dues, fees, charges, or similar amounts paid by members ... as consideration for providing such members ... goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid

....

social club were to receive $10,000 of untaxed income from investments in securities, it could use that $10,000 to reduce the cost or increase the services it provides to its members. In such a case, the exemption is no longer simply allowing individuals to join together for recreation ... without tax consequences.... The extension of the exemption to such investment income is, therefore, a distortion of its purpose.

*Id.*

Section 512(a)(1) defines the term "unrelated business income" generally, as "the gross income derived by any organization from any unrelated trade or business, ... less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business." Section 512(a)(3)(A), however, provides a specific definition for social clubs, which omits mention of the term "trade or business":

> In the case of [a social club], the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income)....

§ 512 (a)(3)(A).

**I. The profit requirement**

The Commissioner's position is that the omission of the term "trade or business" from section 512(a)(3)(A) does not reflect Congress' intent to allow social clubs to deduct losses in non-member activities other than trades or businesses. The Commissioner reasons that the chapter reference in section 512(a)(3)(A) is to Chapter 1 of the Code, and therefore that the Club's food and bar loss deductions are allowed only if they fall under a Chapter 1 deduction provision. The deduction sought here would fall under section 162, which allows deductions

of losses incurred in a trade or business. The well-established rule is that to qualify as a trade or business under section 162, an activity must be regular and profit-seeking. *Commissioner v. Groetzinger,* 480 U.S. 23, 25, 107 S.Ct. 980, 982, 94 L.Ed.2d 25 (1987). The Commissioner urges that the same requirements apply here. The Commissioner believes the Club's food and bar non-member activity was not profit-seeking, as evidenced by the losses reported since 1974.[7]

The Club and amicus contend that the omission of the trade or business requirement from section 512(a)(1), (3) denotes Congressional intent to allow Club's losses from non-member activity to be deductible even if not profit-seeking.

The issue has produced a conflict of decisions between circuits. In *Cleveland Athletic Club v. United States,* 779 F.2d 1160 (6th Cir.1985), an athletic club reported no non-member taxable income after offsetting investment gains against food and bar losses. As here, the club received a net gain if it considered only its direct expenses, but obtained a loss after considering overhead. *Id.* at 1161. The court of appeals held that the food and bar losses were deductible. *Id.* at 1165. The court reasoned that the omission of the terms "trade or business" in section 512(a)(1), (3) was intentional, and that no profit motive was required to make losses from a non-member activity deductible. *Id.* The court required only that the activity be motivated by a desire to obtain "economic gain," to ensure that the activity was not merely a hobby, *id.,* since a hobby only allows the deduction of expenses up to the amount of income. § 183(b)(2).

The same argument was rejected in virtually identical circumstances in *Brook, Inc. v. C.I.R.,* 799 F.2d 833 (2d Cir.1986). The court of appeals in *Brook* explicitly rejected *Cleveland Athletic,* disagreeing that the omission of the term "trade or business" in § 512(a)(3) meant that a profit

---

7. We note that the Commissioner's argument is only relevant to the deductibility of losses, not expenses. The Commissioner acknowledges that another provision of Chapter 1, section 183, allows deductibility of expenses up to the amount of gain for expenses incurred in certain activities which are not profit-seeking (e.g. hob-

bies). The Commissioner agrees that the Club could therefore deduct its expenses up to the amount of gain from each non-member source of income. The Commissioner thinks, however, that for losses to be deductible they must fall under section 162 as business expenses, for the reasons discussed in the text.

motive was not required for loss deductibility. First, the court found no legislative history supporting the argument. *Id.* at 841. Second, the court thought that Congress included the term "trade or business" in section 512(a)(1) because the general rule in that section applied to charitable or educational organizations which were *only* taxed on unrelated business income relating to a "trade or business." By contrast, social clubs are taxed on all income from non-member sources (including, for example, interest from investments). *Id.* at 840–41. The court concluded that section 512(a)(3) meant to put social clubs on par with other taxpayers as to non-member income, requiring that expenses in excess of income are non-deductible unless in pursuit of a profit-seeking "trade or business." *Id.* at 841.

We agree with the *Brook* decision and hold that a social club must pursue a non-member activity with a profit motive before it can properly deduct its losses under section 512(a). Initially, we think it at odds with the language of section 512(a)(3)(A) to permit the Club to deduct losses from non-member activities without grounding the deduction on a provision of Chapter 1 of the Code. Section 512(a)(3)(A) allows the deductions of expenses only if "allowed by this chapter," meaning Chapter 1. The Club has not shown it could be entitled to deduct losses under any provision of the Code, unless under section 162, which requires a profit motive. We similarly reject *Cleveland Athletic's* holding that deduction of losses is allowed upon a showing of intent to derive "economic gain," *Cleveland Athletic*, 779 F.2d at 1166, because no provision in Chapter 1 of the Code allows loss deductions upon such a showing.

Furthermore, our conclusion that a social club must pursue an activity for profit in order to deduct losses is bolstered by the legislative history of section 512(a). Senate Report No. 552, 1969 U.S.Code Cong. & Admin.News p. 2027, *supra*, is authority for the proposition that, by enacting section 512(a), Congress sought to eliminate the differences between the tax treatment afforded individuals seeking independent recreation, and the treatment given to those seeking recreation through a social club. It is contrary to this purpose to read section 512(a) to allow social clubs to deduct losses in activities not entered into for profit, while denying individuals the same deduction.

The Club's contrary reading of section 512(a) relies heavily on an explanation presented before the Ways and Means Committee. The explanation reads in part:

[U]nder the proposal, all income, other than that from members ... would be included in gross income, whether or not the activities generating the income were sufficient to meet the requirements of a "trade or business regularly carried on" generally applicable under the unrelated business income tax. Income from an investment would be subject to the tax whether or not the activities engaged in by the social club in generating that income were sufficient to meet the "trade or business" test of the unrelated business income tax.

. . . .

... [C]onsistent with the elimination of the "trade or business regularly carried on" tests, deductions would be allowable if directly connected with *an activity generating income* subject to tax, rather than only if directly connected with an unrelated trade or business regularly carried on. For example, fees paid ... for the management of an income-producing portfolio of securities, otherwise deductible as an expense for the production of income, would be allowed as directly connected with that income-generating activity, even though that activity may not constitute a trade or business regularly carried on.

Technical Explanation of Treasury Tax Reform Proposals, Hearings on Tax Reform before the Comm. on Ways and Means 91st Cong., 1st Sess., part 14, 5050, 5139–41 (Apr. 22, 1969) (footnote omitted). *See also* Treasury Tax Reform Studies and Proposals, H. Ways and Means Comm. and S.Fin. Comm.Jt.Pub., Part 3, 319, 324 (Feb. 5, 1969) (same).

We are not persuaded that this explanation promotes the Club's reading of section 512(a). The explanation clarifies that section 512(a) will tax income that may not qualify as income from a trade or business, and that deductions should be allowed corresponding to any activity generating income subject to the tax. However, the explanation does not specify the extent of the deductions allowed, and clearly does not say that deduction of *losses* is proper even if the non-member activity was not entered into for profit. Again, the Commissioner here does not contend that the Club should not be able to deduct food and bar expenses flowing from non-member activities not entered into for profit. The Commissioner would only disallow the deductibility of losses, i.e. expenses in excess of gains, in such a case. Thus, the Commissioner's position is not inconsistent with the explanation. In sum, after considering the language of section 512 and the legislative history, we conclude a Club's non-member activity must be entered into for profit before its losses from that activity are properly deductible.[8]

## II. The Club's profit motive

The Club contends that if profit motive need be shown to deduct its losses from non-members activity, it has shown that profit motive. The tax court so held.

### 1. Standard of review

According to the Club and the Amicus, the tax court's ruling that the Club had a profit motive is a factual finding reversible only if "clearly erroneous." The Commissioner agrees that the Club intended to derive economic gain from non-member activities, but disagrees that this constitutes an intent to "profit" under the Code. Thus, the Commissioner proposes that the issue is a purely legal question, reviewable de novo.

■ Appeals from tax determinations may involve both factual determinations, reversible for clear error, and conclusions of law, reviewable de novo. *See Sochin v. C.I.R.*, 843 F.2d 351, 353 (9th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988) (tax court's holding that taxpayer investment losses were not deductible because transactions were "factual shams" reviewed for clear error as to finding the transactions were shams and de novo as to the application of the proper legal standards for making the sham determination).

■ We are confident that this case calls for de novo review, because we must determine whether the tax court applied the proper legal standards to the term "profit." The tax court decided that the Club had a profit motive in its non-member activities by examining "the question of objective for profit not from the vantage point of *taxable* profit, as [the Commissioner] urges, but rather from the standpoint of an incremental increase in available funds to [the Club]." 89 T.C. at 572. The issue is therefore whether the tax court was correct in equating the Club's "intent to increase available funds" with the "intent to profit," as profit should be understood in connection with section 512(a).

8. Amicus further relies on *Anaheim Union Water Co. v. C.I.R.*, 321 F.2d 253 (9th Cir.1963) to argue that section 162, as applied to a non-profit organization, does not require that the trade or business be entered into for profit. In *Anaheim,* this court allowed an irrigation company to deduct expenses in excess of income under section 162, where the *company's* bylaws obligated it to sell water at cost and operate as a non-profit organization (the company did not qualify for tax exemption under the Tax Code). The court thought the deductible "ordinary and necessary" expenses of that corporation included all expenses, including those exceeding costs. *Id.* at 258. This reasoning is questionable in light of the development of the law surrounding section 162, to the effect that for an activity's losses to be deductible under section 162, a taxpayer must undertake the activity for profit. *See Commissioner v. Groetzinger,* 480 U.S. 23, 107 S.Ct. 980, 987, 94 L.Ed.2d 25 (1987). Even if a corporation such as the one in *Anaheim* stood on a different footing, that case is inapposite. The Club concededly is not required to, and does not, sell its goods and services to non-members at cost. In this capacity, the Club's social club status does not preclude it from engaging in a profit-seeking activity from which it could deduct its losses.

### 2. Profit under the Code

The Commissioner argues that the term profit means "tax profit" in all cases involving section 162. We do not need to evaluate the truth of that broad assertion to decide this case. Rather, our decision is relevant only in the context of a social club which seeks to deduct losses under section 512(a), and thereby incorporates other deduction provisions of Chapter 1 of the Code.[9]

We conclude that the Club can properly deduct losses from a non-member activity only if it undertakes that activity with the intent to profit, where profit means the production of gains in excess of all direct and indirect costs. The tax court therefore erred in holding that tax profit should be viewed "not from the vantage point of *taxable* profit ... but rather from the standpoint of an incremental increase in available funds to [the Club]." We cannot accept the proposition that the Club's intent to derive economic benefit from non-member activity, before considering indirect costs, satisfies the profit requirement that should be read into section 512(a) when a loss deduction is sought. The Club admits that it seeks to devote revenues in excess of direct costs to "the operation of the club." The Club's interpretation of section 512(a), however, would allow the same revenues to go untaxed. Such use of non-member revenues is manifestly the sort of tax-free subsidy to social club members that section 512(a) sought to prevent. *See* Senate Report No. 552, *supra,* 1969 U.S. Code Cong. & Admin.News p. 2027.

### 3. The Club's intent to profit under the Code

There remains the question of whether the Club's practices reflect an intent to profit under the new standard. We do not remand this case for a reevaluation of the Club's intent because it is clear that the Club never intended to profit in the sense of producing gains in excess of both direct and indirect costs. The Club concedes that its only intent was to produce gains in excess of direct costs.

The decision of the tax court is REVERSED.

---

9. Thus, we do not discuss at length the significance of *Hirsch v. C.I.R.,* 315 F.2d 731 (9th Cir.1963), relied on by the Commissioner. There the director of a bankrupt association sought to deduct his directorship expenses, even though he was never paid a salary and the court concluded he never sought to profit. The court affirmed denial of the expense deduction saying that to carry on a business or trade, the taxpayer must have "the dominant hope and intent of realizing a profit, i.e. *taxable income.*" *Id.* at 736 (emphasis added). We only note that *Hirsch* did not present the problem to that court that a taxpayer could seek economic gain but not taxable profit, and yet claim the deduction under section 162.