NADER E. SOLIMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 35698-87.     Filed January 18, 1990.

*David M. Sokolow,* for the petitioner.
*Karen E. Chandler,* for the respondent.

WILLIAMS, *Judge:* The Commissioner determined a deficiency in petitioner's 1983 Federal income tax as follows:

|  | Deficiency | Sec. 6651(a)(1) [1] | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661 |
|---|---|---|---|---|---|
| 1983 | $20,338 | $1,089 | $2,538 | * | $3,864 |

*50 percent of the interest due on the underpayment.

---

[1] All section references are to the Internal Revenue Code of 1954 as in effect for the year in issue, unless otherwise indicated.

The issues we must decide are: (1) Whether petitioner is entitled to a home office deduction pursuant to section 280A, (2) whether petitioner is entitled to a business expense deduction for the use of his automobile, (3) whether petitioner is entitled to a deduction for expenses incurred in traveling to the Virgin Islands and Orlando, Florida, and (4) whether petitioner is liable for additions to tax as determined by respondent. Petitioner conceded the section 6651(a)(1) addition to tax prior to trial.

## FINDINGS OF FACT

Some of the facts in this case have been stipulated and are so found. Petitioner resided in McLean, Virginia, at the time the petition was filed in this case. Petitioner, a self-employed anesthesiologist, was the sole proprietor until September 1, 1983. He incorporated Nader Soliman, M.D., on September 1, 1983.

During 1983, petitioner worked as an anesthesiologist at Surburban Hospital in Bethesda, Maryland, Shady Grove Hospital in Rockville, Maryland, and Loudon Memorial Hospital in Leesburg, Virginia. Petitioner earned income in 1983 by administering anesthesia to patients before surgery, and treating patients for pain. Petitioner performed all of these services in the hospitals where he was on staff. Petitioner spent 30 to 35 hours per week at the hospitals. He spent approximately 80 percent of that time at Suburban Hospital, and he spent most of the remaining time at Loudon Memorial Hospital. Petitioner was not provided an office at any of the three hospitals.

During 1983, petitioner lived in a three-bedroom apartment in McLean, Virginia. He used one bedroom as an office where he kept the following: chair, desk, couch, telephone, answering machine, copier, filing cabinet, patient records, billing records, correspondence with patients, names of surgeons and insurance companies, medical journals, medical texts, collection agency records, and insurance code books. In his office, petitioner contacted surgeons and patients by telephone, contacted hospitals to arrange admission for his own patients, maintained detailed billing records and patient logs, transmitted this information to a billing service, recorded collected payments on the patient logs,

read medical books and journals, and prepared for specific patients. Petitioner also satisfied his continuing medical education requirements and prepared for his monthly presentations to post-anesthesia care nurses at Suburban Hospital in his office at home. Petitioner spent an average of 2 to 3 hours a day working in his home office but never treated patients there. Petitioner's only "personal" use of his home office was to balance his checkbook which combined his business and personal affairs.

Petitioner deducted on Schedule C of his 1983 Federal income tax return home office expenses and depreciation in the amount of $841 for the first 8 months of 1983. Petitioner claimed Schedule E home office deductions for expenses and depreciation in the amount of $418 for the last months of 1983. Respondent disallowed petitioner's home office deduction.

During 1983 petitioner owned two automobiles, a Buick and a Honda. Petitioner drove the Buick exclusively on trips between his home office and the hospitals, and between the hospitals and hotels where he stayed when he was on call. In 1983, petitioner drove his Buick a little over 10,000 miles. Petitioner incurred and claimed on his 1983 Federal income tax return automobile expenses in driving his Buick between hospitals and between his home office and hospitals of $1,014 during the first 8 months of 1983, and $508 during the last 4 months of 1983. Petitioner also claimed a depreciation deduction for his Buick of $2,236. Respondent disallowed petitioner's depreciation and automobile expense deduction.

In June of 1983, petitioner and his wife attended a seminar in the U.S. Virgin Islands emphasizing tax-saving techniques and tax shelters. Petitioner's 3-year old son accompanied them on their trip. Petitioner attended the seminar from June 26 to June 29, 1983. Time spent at the seminar included picking up registration materials the first day, approximately 15 hours of seminars over the next 3 days, and a free consultation. Petitioner left the Virgin Islands on July 4, 1983, after spending 10 days there. On his 1983 Federal income tax return petitioner deducted his wife's and his round-trip airfare to the Virgin Islands and their hotel and meal expenses on days when petitioner had

any contact with the seminar as follows: seminar fee—$498; meals—$376; airfare—$1,158; hotel—$394.

On August 19, 1983, petitioner, his wife, and 3-year old son flew from Washington, D.C., to Orlando, Florida, for an additional tax and financial planning consultation. As a result, petitioner was sent an investment proposal. Petitioner was advised by his accountant, however, that the investment was a sham tax shelter. Consequently, petitioner did not invest in the tax shelter. Petitioner claimed as a deduction on his 1983 Federal income tax return the expenses of his trip to Orlando, Florida as follows: consultation fee—$1,250; hotel—$60.46; airfare—$554. Petitioner's trips to the Virgin Islands and Orlando, Florida during 1983 were primarily for personal reasons.

In the statutory notice of deficiency, respondent determined that petitioner had understated his gross receipts on his U.S. Individual Income Tax Return in the amount of $31,219. One thousand three hundred and sixty-two dollars of the unreported gross receipts were amounts collected and subsequently refunded to insurance providers which respondent concedes are not taxable. Seventeen thousand four hundred and twenty-five dollars of the unreported gross receipts are amounts paid prior to September 1983 for services provided by petitioner which were not reported on his U.S. Individual Income Tax Return or on the U.S. Corporate Income Tax Return of Nader Soliman, M.D., P.C. Twelve thousand four hundred and thirty-two dollars of the unreported gross receipts represents amounts collected prior to September 1983 for services provided by petitioner which should have been reported on his U.S. Individual Income Tax Return but were, instead, reported on the U.S. Corporation Income Tax Return of Nader Soliman, M.D., P.C. Petitioner has conceded the taxability of $29,857 of the gross receipts.

OPINION

The first issue we must decide is whether petitioner is entitled to a deduction for his home office pursuant to section 280A. Section 280A provides generally that expenses in connection with the use of a taxpayer's residence are not deductible. An exception to the general rule, section

280A(c)(1)(A), permits the deduction of home office expenses if a portion of the home is "exclusively used on a regular basis" as the principal place of business for any trade or business of the taxpayer. An employee must also show that the office is maintained "for the convenience of his employer." Sec. 280A(c)(1). Petitioner argues that as a practicing anesthesiologist without any other office, his home office was his principal place of business.

Prior to the enactment of section 280A, we allowed a deduction for an "ordinary and necessary" home office expense pursuant to section 162(a) if the expense was "appropriate and helpful." See, e.g., *Newi v. Commissioner*, 432 F.2d 998, 1000 (2d Cir. 1970), affg. a Memorandum Opinion of this Court. Congress curtailed this liberal allowance of home office expense deductions by enacting section 280A. See *Green v. Commissioner*, 707 F.2d 404, 407 (9th Cir. 1983), revg. 78 T.C. 428 (1982). Congress intended to prevent a deduction for essentially personal expenses and allow a deduction only for business use of residences. S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 185; see *Drucker v. Commissioner*, 715 F.2d 67, 69 (2d Cir. 1983, revg. 79 T.C. 605 (1982).

We believe, and respondent does not seriously contend otherwise, that petitioner used one room in the apartment exclusively on a regular basis in his business. The issue, therefore, is whether the home office was petitioner's principal place of business. We have applied the "focal point" test to identify the taxpayer's principal place of business. *Baie v. Commissioner*, 74 T.C. 105 (1980). The "focal point" of the taxpayer's activities, and thus his principal place of business, is the place where goods and services are provided to customers and revenues are generated. *Drucker v. Commissioner*, 79 T.C. at 613-614; *Baie v. Commissioner*, supra at 109.

We have consistently followed *Baie* and the "focal point" test. See, e.g., *Drucker v. Commissioner*, 79 T.C. at 612; *Green v. Commissioner*, 78 T.C. at 433; *Jackson v. Commissioner*, 76 T.C. 696, 700 (1981). Courts of Appeals have questioned our test. See *Meiers v. Commissioner*, 782 F.2d 75 (7th Cir. 1986), revg. a Memorandum Opinion of this Court; *Weissman v. Commissioner*, 751 F.2d 512 (2d Cir.

1984), revg. a Memorandum Opinion of this Court; *Drucker v. Commissioner*, 715 F.2d 67 (2d Cir. 1983), revg. 79 T.C. 605 (1982). In light of this response, we believe we need to revisit the "focal point" test and our interpretation of section 280A for cases in which administration of the taxpayer's business is essential and the only available office space is in the taxpayer's home.

The "focal point" test looks only to the place where services are performed and income is generated. Under this test, petitioner's home office is not the "focal point" of his business. His business activities at the house were essential to his medical practice but were ancillary to the primary income-generating services petitioner performed as an anesthesiologist at the hospitals. We believe, however, that where a taxpayer's occupation requires essential organizational and management activities that are distinct from those that generate income, the place where the business is managed can be the principal place of business.

Congress provided exceptions to the restrictions of section 280A by allowing deductions for a home office if either the home office is the taxpayer's principal place of business, sec. 280A(c)(1)(A), or it is used for meeting with the taxpayer's patients, clients, or customers in the taxpayer's business, sec. 280A(c)(1)(B). Goods and services could be transferred to customers and clients in the taxpayer's home, the "focal point," only if the taxpayer meets clients or customers in his home. The "focal point" test, therefore, merges the "principal place of business"exception with the "meeting clients" exception and practically eliminates the principal place of business exception from section 280A. See *Drucker v. Commissioner*, 79 T.C. at 623 (Wilbur, J., dissenting). If the "principal place of business" exception has meaning independent of the exception for home offices used to meet clients or patients, then the "focal point" test should give way to an analysis of all the facts and circumstances.

The determination of "principal place of business" necessarily depends on the facts and and circumstances of each case. A principal place of business is not necessarily where goods and services are transferred to clients or customers but is frequently the administrative headquarters of a

business. Furthermore, where no other suitable office is provided for essential organizational activities of a business, the fact that goods or services are delivered elsewhere should not per se require a conclusion that a home office is other than the principal place of business. The inquiry is appropriately into the surrounding facts and circumstances. See *Weissman v. Commissioner, supra.*

The time spent in the home office is one of several important factors to consider, but it is not necessarily the predominant factor. See *Meiers v. Commissioner,* 782 F.2d at 79. This is an especially important point for a business such as petitioner's that, to be successful, has different activities, one that is typically suited to office work and one that is not. Petitioner's business required him to perform two very different functions: (1) To render medical services at hospitals, and (2) to care for administrative chores, e.g., record keeping, gathering of billing information and payments, continuing medical education. Both functions were equally essential to a successful medical practice; the second required an office while the first did not. Petitioner's business required him to devote substantial time to office chores, and, although he spent more hours at the hospitals, we believe that comparing the number of hours spent at each location is a misleading comparison because the activities are so different from each other. Such a comparison can be meaningful if the activities in the home office are similar to the activities at another place of business. E.g., *Drucker v. Commissioner, supra.* We believe *Weissman v. Commissioner, supra* at 514, is instructive on this point. In *Weissman,* a professor had two offices: one in his home and one on campus. In deciding that his home office was his principal place of business, the Court of Appeals compared the number of hours that he spent at the home office to number of hours that he spent at the campus office. Based on time spent at his home office, the Court of Appeals permitted him deductions for maintaining his home office because it was the most important office for his business. Because the taxpayer had more than one office, the time spent at each office became the deciding factor. If such a comparison were the determining standard, however, it would preclude the deduction approved by the Secretary in

his proposed regulations. Sec. 1.280A-2(b)(3), Proposed Income Tax Regs., 45 Fed. Reg. 52399 (Aug. 7, 1980), as amended 48 Fed. Reg. 33320 (July 21, 1983). The proposed regulations recognize that "if an outside salesperson has no office space except at home and spends a substantial amount of time on paperwork at home, the office in the home may qualify as the salesperson's principal place of business." The proposed regulations do not require more time to be spent in the home office than on the road. Any successful outside salesperson is not going to spend more time in his office than outside selling. The proposed standard is spending "a substantial amount of time on paperwork at home." We agree with this standard if the taxpayer has no other available facility to accomplish the administrative chores of his business.

In *Pomarantz v. Commissioner,* 867 F.2d 495 (9th Cir. 1988), affg. T.C. Memo. 1986-461, the Court of Appeals sustained our decision disallowing a deduction for home office expenses on facts superficially similar to those in the present case. The taxpayer in *Pomarantz* was an emergency room physician who provided his services to a hospital as an independent contractor. The hospital did not provide him with office space, and he used a room in his home exclusively as an office. Reasoning that the taxpayer spent more hours and performed more important activities at the hospital, we held that under any standard, the taxpayer's home office was not his principal place of business. T.C. Memo. 1986-461. Deferring to this Court under a clearly erroneous standard, 867 F.2d at 497, the Ninth Circuit affirmed our holding that under either the focal point test or the facts and circumstances test, the hospital was the taxpayer's principal place of business. We reach a different conclusion in this case because the taxpayer in *Pomarantz* spent an insubstantial amount of time in his home office. By contrast, in this case, petitioner's practice required that he spend a substantial amount of his time, over 30 percent, working in his home office. In weighing the factors in this case, we believe that this difference is significant and requires a different conclusion about petitioner's principal place of business.

Some other important factors that must be considered are the business exigencies for having a home office, whether the functions performed in the home office are essential to the conduct of business, whether the office is suitable for the essential business functions performed there, and the appropriateness of the furnishings. While proposed regulations have no force or effect, they do state a considered position by respondent. We note again that respondent's considered position is in accord with this view.

In this case, the activities petitioner performed in his home office, viz, bookkeeping, billing, preparation for patients, and continuing medical education, were distinct from those he performed at the hospital. He maintained patient records, billed patients, collected and recorded payments, and reviewed medical procedures. These activities were essential to petitioner's work. In order to carry on his business as an anesthesiologist, it was essential for petitioner to keep abreast of the latest technology, to bill his patients, and to maintain his State certification as an anesthesiologist.

The hospitals did not provide petitioner with office space. Petitioner's case is distinguishable from cases, therefore, where a taxpayer's employer provided adequate office space outside his home. See *Sharon v. Commissioner*, 66 T.C. 515, 525 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978). Petitioner managed and coordinated his anesthesiology work in his home office. He spent approximately 30 percent of his time in his home office. In addition to spending substantial time there, petitioner's use of the home office was important to a successful medical practice. In this case, however, petitioner had no place to manage his medical practice other than in his home. Compare *Weissman v. Commissioner, supra.*

Balancing the factors, we believe that the lack of any other office weighs significantly in petitioner's favor. Because administrative functions must be performed, we cannot simply tote up the number of hours he spent at his office and at the hospital on the basis of where he spent more time conclude that was his principal place of business. His time in the office was substantial, and because his office activities were distinct from his medical activities at

the hospital and were essential to a successful practice, we weigh more heavily in our consideration the lack of alternative office space than a mechanical comparison of the number of hours spent there.

Petitioner's practice as an anesthesiologist, in effect, was headquartered in his home office. Section 280A was not enacted to compel a taxpayer to rent office space rather than work out of his own home. See *Meiers v. Commissioner*, 782 F.2d at 79. We believe that Congress intended to allow a deduction for this type of home office expense when it enacted section 280A. We hold that petitioner's home office was his principal place of business, and we will no longer follow our opinion in *Drucker v. Commissioner, supra,* in cases in which a taxpayer's home office is essential to his business, he spends substantial time there, and there is no other location available to perform the office functions of the business.[2]

For the last 4 months of 1983, after petitioner incorporated, he must also show that he maintained the home office "for the convenience of his employer." Sec. 280A(c)(1). Petitioner had no other office space available; his business activities there remained unchanged and were essential to his professional corporation's business. Maintaining the home office was a business necessity, and, therefore, was "for the convenience of his employer." See *Drucker v. Commissioner*, 715 F.2d at 70.

The next issue we must decide is whether petitioner may claim a deduction for expenses and depreciation arising from the use of his automobile. Petitioner claimed a deduction for all expenses and depreciation based on total business usage of his Buick. The parties agreed that petitioner is entitled to deduct $1,522 in expenses and $2,236 of depreciation if we hold that his home office is his principal place of business. Because we have held that petitioner's home office is his principal place of business, petitioner may deduct the expenses and depreciation.

We must next determine whether petitioner may deduct expenses in attending a seminar in the U.S. Virgin Islands and a seminar in Orlando, Florida. Petitioner argues that he

---

[2]The parties do not discuss the restrictions of sec. 280A(c)(5), and we assume they agree that the restrictions have no effect on the amounts petitioner may deduct for his home office.

is entitled to a deduction for these expenses pursuant to section 212.

Section 212 provides for the deduction of all ordinary and necessary expenses incurred for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income, or in connection with the determination, collection, or refund of any tax. To be deductible pursuant to section 212, expenses must be reasonable in amount and "must bear a reasonable and proximate relation to the production or collection of taxable income or to the management, conservation, or maintenance of properties held for the production of income." Sec. 1.212-1(d), Income Tax Regs. Petitioner points to his purchase of life insurance and the incorporation of his practice as results of his trips to the Virgin Islands and Orlando, Florida. It remains unclear, however, how the trips bear any reasonable relationship to petitioner's need for advice on financial planning. Judging from the evidence before us, we believe that petitioner's trips were predominantly personal family vacations. Consequently, we hold that those expenses are not deductible.

The next issue we must decide is whether petitioner is liable for additions to tax pursuant to sections 6653(a)(1) and (a)(2). Section 6653(a)(1) provides that if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) provides for an additional negligence addition in an amount equal to 50 percent of the interest payable on the portion of the underpayment that is attributable to negligence. For purposes of section 6653(a), negligence is defined as lack of due care or failure to do what a reasonable and prudent person would do under the circumstances. *Neely v. Commissioner*, 85 T.C. 934, 947 (1985). Petitioners have the burden of proof on this issue. Rule 142(a), Tax Court Rules of Practice and Procedure.

Petitioner failed to report $29,857 of his taxable income, $12,432 of which was reported on petitioner's corporation's return and $17,425 of which was completely omitted. Petitioner kept books and records and consulted his accountant on tax matters. We believe that his careless omission

of this income from his Federal income tax was due to negligence. It does not appear, however, that any other portion of petitioner's underpayment is due to negligence. Petitioner's claimed deductions were well-grounded in fact and supportable under the law. While we have sustained part of respondent's disallowance, petitioner's taking the deductions was not negligent.

Finally, we must determine if petitioner is liable for an addition to tax pursuant to section 6661. Section 6661 provides for an addition to tax of 25 percent of the amount of underpayment of tax attributable to a "substantial understatement of income tax." A substantial understatement of tax exists if the taxpayer, without substantial authority, or adequate disclosure of facts, has understated his tax liability by the greater of $5,000 or 10 percent of the tax required to be shown on the return. Sec. 6661(b)(1)(A). The understatement is reduced by so much of it as is based on a position supported by substantial authority or is attributable to facts adequately disclosed on the return. Sec. 6661(b)(2)(B).

It appears that there is or was substantial authority or adequate disclosure of all matters in dispute except for petitioner's unreported income of $29,857. Petitioner's return shows a tax liability of $30,413. The tax required to be shown on the return is yet to be computed, but it would appear to be approximately $45,000. Petitioner is, therefore, liable for the addition on his understatement of income tax that is attributable to his unreported income because this understatement appears to exceed the greater of $5,000 or 10 percent of the tax required to be shown on his return.

*Decision will be entered pursuant to Rule 155.*

KÖRNER, HAMBLEN, COHEN, SWIFT, JACOBS, GERBER, WRIGHT, WELLS, WHALEN, and COLVIN, *JJ.,* agree with the majority opinion.

NIMS, *C.J.*, dissenting: With deference to the judgment of a majority of my colleagues, I am unable to detect any reliable basis for determining a taxpayer's principal place of business in the absence of applying the focal point test (modified as discussed below) first enunciated in *Baie v. Commissioner*, 74 T.C. 105 (1980), and thereafter consistently applied by this Court. In that case we said the following: "We therefore take it that what Congress had in mind [as to a taxpayer's "principal place of business"] was the focal point of a taxpayer's activities * * * ." 74 T.C. at 109.

To paraphrase a statement by Judge Ruwe in his companion dissenting opinion, the appellate court opinions in the three cases in which this Court has been reversed for having inappropriately applied the focal point test make it apparent that the single most important factor relied upon by these Courts of Appeals was that the taxpayer spent the majority of his or her business time at the "home office," rather than at the place where goods or services were provided to customers or clients or where income is produced. To that I would simply add that the Courts of Appeals also stressed the importance of the work performed at home. See *Meiers v. Commissioner*, 782 F.2d 75, 78 (7th Cir. 1986), revg. T.C. Memo. 1982-51; see also *Drucker v. Commissioner*, 715 F.2d 67 (2d Cir. 1983), revg. 79 T.C. 605 (1982); and *Weissman v. Commissioner*, 751 F.2d 512 (2d Cir. 1984), revg. T.C. Memo. 1983-724.

It seems to me that each of the above cases involved the *Drucker* case's "rare situation" where, on the unusual facts presented, the taxpayer's principal place of business was not that of his employer because, in time and importance, the office in the home was the *true* focal point, and therefore the principal place, of the taxpayer's business. See *Drucker v. Commissioner*, 715 F.2d at 69. Thus, in order to maintain a reference point from which to determine the principal place of business, I would preserve the focal point test, modified to the extent necessary in the rare situation where in time and importance the home office itself became the focal point of the taxpayer's activities.

The majority holds that to make the determination of principal place of business "the inquiry is appropriately into

the surrounding facts and circumstances." (Majority op. at 26.) But as we stated in *Baie v. Commissioner*, 74 T.C. at 108, "Prior to the enactment of section 280A, this Court had allowed a deduction for an office in an employee's residence on the grounds that the maintenance of such office was 'appropriate and helpful' *under the circumstances.*" (Emphasis supplied.) Thus, the reintroduction of a facts and circumstances inquiry takes us all the way back to square one, i.e., to the situation which existed even before Congress took what it thought would be the remedial action of section 280A.

The focal point test has been our response to the Congress' use of the word "principal" in the statutory phrase "principal place of business." At the least, the statutory phrase requires us to compare the putative principal place with other places that might be principal places and, using some standard, determine whether the putative principal place ranks higher than the other places. The majority's approach does not seek to make such a comparison. The majority seems to examine the importance of petitioner's office in the home, but does not examine whether that importance is greater than the importance of, say, the hospital facilities in which petitioner delivers his anesthesiology services. As Judge Ruwe points out, the majority does not even examine whether petitioner spent more time in his office in the home than in the hospital facilities. In effect, the majority has substituted the phrase "important place of business" for the phrase that the Congress enacted.

Since on the facts it is indisputable that Dr. Soliman's activities do not meet the unglossed focal point test, nor do they appear to meet the "time and importance" modification of the focal point test introduced by the Courts of Appeals cases, I would hold for respondent on the principal place of business issue.

CHABOT, PARKER, CLAPP, and PARR, *JJ.,* agree with this dissent.

RUWE, *J.,* dissenting: I respectfully disagree with the majority's conclusion that petitioner is entitled to a home office deduction under section 280A.

Section 280A generally denies deductions related to a home office unless certain conditions are met. The condition in question in this case is whether petitioner's home office was his "principal place of business" within the meaning of section 280A(c)(1)(A). It is clear that a taxpayer can have only one principal place of business for each business in which he is engaged. *Pomarantz v. Commissioner,* 867 F.2d 495, 496 (9th Cir. 1988), affg. T.C. Memo. 1986-461; *Drucker v. Commissioner,* 79 T.C. 605, 612 (1982), revd. on other grounds 715 F.2d 67 (2d Cir. 1983).

The majority ostensibly overrules the "focal point" test for determining a taxpayer's principal place of business. It does so on the basis of cases decided by the Second and Seventh Circuit Courts of Appeals which reversed opinions of this Court. I agree that the "focal point" test, as previously applied by this Court, can place undue emphasis on where the taxpayer's activities are most visible, where he physically meets and deals with customers, and where goods and services are ultimately exchanged for income.[1] Nevertheless, when a taxpayer has two or more places of conducting business it is incumbent upon us to specify a standard which can be applied in determining which is the principal place of business.

The circuit courts that have rejected the "focal point" test have held that a taxpayer's principal place of business for purposes of section 280A is "the place where the dominant portion of his work is accomplished." *Weissman v. Commissioner,* 751 F.2d 512, 514 (2d Cir. 1984), revg. a Memorandum Opinion of this Court; *Meiers v. Commissioner,* 782 F.2d 75, 78-79 (7th Cir. 1986), revg. a Memorandum Opinion of this Court. I agree that this is the appropriate test. The majority, however, does not adopt this test. In fact, nowhere in the majority opinion is this test even mentioned.

---

[1] In many cases the "focal point" test will produce the same result as the other test which has been used by the Courts of Appeals. See Pomarantz v. Commissioner, 867 F.2d 495 (9th Cir. 1988), affg. T. C. Memo. 1986-461.

The majority opinion sets forth various factors to be considered in making its determination. However, the majority fails to use these factors to *compare* petitioner's several places of business in order to determine where "the dominant portion of his work is accomplished." Instead, the majority simply concludes that when "a taxpayer's home office is essential to his business, he spends substantial time there, and there is no other location available to perform the office functions of the business" (majority opinion at p. 29), then the home office is the principal place of business. The majority eliminates the need to compare the importance of home office activities with the importance of activities at the other place of business or to compare the amount of time spent at the home office with the amount of time spent at the other place of business. Indeed, the majority eliminates the need to determine where "the dominant portion of [the taxpayer's] work is accomplished." In doing so, the majority takes the highly unusual step of overruling precedent in this Court on the basis of appellate court opinions and then disregarding the test articulated in those same appellate court opinions.

In the three appellate court opinions in which this Court has been reversed for having applied a "focal point" test, it is obvious that a major factor relied upon by the circuit courts was the amount of time that the taxpayer spent at his various places of business. In *Drucker v. Commissioner, supra,* there was a factual finding that the taxpayer-musician spent the majority of his working hours in his home studio. In *Weissman v. Commissioner, supra,* it was found that the college professor spent 80 percent of the time devoted to his business in his home office. Finally, in *Meiers v. Commissioner, supra,* the taxpayer spent two-thirds of her business time in her home office. In *Meiers,* we held that the time spent at various business locations was not controlling, but instead, focused on the place where goods and services were provided to customers. *Meiers v. Commissioner,* T.C. Memo. 1984-607. In commenting on this, the Seventh Circuit stated that "we think a major consideration ought to be the length of time the taxpayer spends in the home office as opposed to other locations." *Meiers v. Commissioner,* 782 F.2d at 79. The facts clearly

show that in the instant case petitioner did not spend most of his business time at his home office. Instead, petitioner devoted most of his business time to practicing medicine at Suburban Hospital.

The majority acknowledges that in *Weissman v. Commissioner, supra,* the Second Circuit considered the amount of time spent at the home office *compared* with the amount of time spent on campus[2] to be the deciding factor (majority op. at 26 and 27). The majority states that "Such a comparison can be meaningful if the activities in the home office are similar to the activities at another place of business." (Majority opinion at 26.) The majority infers that Professor Weissman's campus activities were similar to those at his home office. The activities performed by Professor Weissman on campus and at his home office were not similar. The heart of the contest in *Weissman v. Commissioner, supra,* both in our opinion and in that of the Second Circuit, was that the taxpayer's campus activities, including those at his campus office, were exclusively concerned with Professor Weissman's classroom work ("where he taught, met with students, graded examinations, and prepared lectures." *Weissman v. Commissioner,* 751 F.2d at 514), whereas his home office activities were exclusively related to research and writing. The Second Circuit's only disagreement with our opinion was with respect to the relative importance of the *different* types of activities conducted on campus and at home. That is obviously why the court criticized our "focal point" test for placing undue emphasis on classroom activities. *Weissman v. Commissioner,* 751 F.2d at 514.[3]

---

[2]The majority incorrectly says that the comparison was between the hours "spent at the home office" as opposed "to the number of hours * * * spent at the campus office." (Majority opinion at 26. Emphasis added.) The facts show that Professor Weissman spent very little of his campus time at the campus office. Both this Court and the Second Circuit compared home office time with total time spent on campus including classroom time, consultations with students, and time spent in the campus library. *Weissman v. Commissioner,* T.C. Memo. 1983-724, affd. 751 F.2d 512 (2d Cir. 1984).

[3]"In the case of educators, the focal point approach does not always adequately distinguish between individuals with very different employment activities." *Weissman v. Commissioner,* 751 F.2d at 514. (Emphasis added.) The same approach was taken in *Meiers v. Commissioner,* 782 F.2d 75 (7th Cir. 1986), revg. a Memorandum Opinion of this Court. The Seventh Circuit clearly found that Mrs. Meiers' activities at her home office and at the laundry were different, but of equal importance. Time spent at the respective places of business thus became the deciding factor. *Meiers v. Commissioner,* 782 F.2d at 79.

The majority states that "If such a comparison [time spent at different places of business] were the determining standard, however, it would preclude the deduction approved of by the Secretary in his proposed regulations." (Majority opinion at 26-27.) The *proposed* regulations, cited by the majority, say that an outside salesman's home office *may* qualify as his principal place of business. The home office of an outside salesman, who spends most of his time visiting many different customers at different locations, might be his principal place of business in comparison with any other place. That situation has nothing to do with the facts in this case, and it is inappropriate to try to anticipate application of *proposed* regulations to facts that are not before this Court. In any event, it would be error to reject the test adopted by the Circuit Courts of Appeals because of a *proposed* regulation. Proposed regulations are not entitled to judicial deference. *Natomas North America, Inc. v. Commissioner,* 90 T.C. 710, 718 n. 11 (1988); *North Ridge Country Club v. Commissioner,* 89 T.C. 563, 579-580 (1987), revd. on other grounds 877 F.2d 750 (9th Cir. 1989); *Laglia v. Commissioner,* 88 T.C. 894, 897 (1987); *Scott v. Commissioner,* 84 T.C. 683, 690 (1985); *F. W. Woolworth Co. v. Commissioner,* 54 T.C. 1233, 1265-1266 (1970).

The amount of time spent at the home office, while of major importance, is not necessarily the only consideration. Another is the importance of the business functions performed by the taxpayer in the home office. *Meiers v. Commissioner,* 782 F.2d at 79; *Weissman v. Commissioner,* 751 F.2d at 515; *Drucker v. Commissioner,* 715 F.2d at 69. Petitioner's business was being an anesthesiologist. He administered to patients at the hospital and never met patients at his home office. His use of the home office to read medical journals, arrange his schedule, and perform billing activities was no doubt essential to his medical practice. However, if one were to rank the importance of those activities against the actual performance of medical services that took place exclusively during the 30 to 35 hours that he spent each week at the hospitals (24 to 28 at Suburban), there is no question that his hospital based activities were more important to his anesthesiology practice than his home office activities. In all the aforemen-

tioned appellate court opinions wherein this Court was reversed, there was a specific qualitative determination that the home office activities were at least as important to the taxpayer's business as the activities performed away from the home office. The new test adopted by the majority makes no provision for weighing the relative importance of petitioner's hospital activities versus his home activities.[4]

Even if we were to find that petitioner's home office activities and his treatment of patients were of equal importance to his medical practice, existing precedent would still require us to decide which place of business was the one where "the dominant portion of his work is accomplished." *Weissman v. Commissioner,* 751 F.2d at 514; *Meiers v. Commissioner,* 782 F.2d at 79. See *Pomarantz v. Commissioner, supra.* Comparing the amount of time petitioner spent working at his respective places of business clearly leads to the conclusion that Suburban Hospital was where petitioner spent most of his business time.

In *Pomarantz v. Commissioner, supra,* we and the Ninth Circuit denied a home office deduction under circumstances strikingly similar to those in the instant case. Dr. Pomarantz was an emergency room physician. All of his treatment of patients occurred at the hospital where he spent about 33 to 36 hours per week. The hospital did not provide adequate office space. Dr. Pomarantz maintained a home office at which he kept an extensive medical library, business records, and copies of patient charts. He spent time at his home office reading medical publications, conducting patient followup activities, and performing business-related duties. In certain weeks, the time spent in home office business activities exceeded time spent at the hospital; but, in most weeks and as an average, he spent more time per week working at the hospital. We described Dr. Pomarantz' home office activities as "clearly essential" to his medical practice. In denying the home office deduction, we held that under either the "focal point" test or the

---

[4] The majority describes petitioner's home office activities as "essential to his medical practice but * * * ancillary to the primary income generating services petitioner performed as an anesthesiologist." (Majority op. at 25.) (Emphasis added.) The word "ancillary" is most often used to describe something that is subordinate to that which is principal or primary. Webster's Third International Dictionary (Unabridged) (1986); see Black's Law Dictionary 78, 79 (5th ed. 1979).

test applied in the Second and Seventh Circuits, the taxpayer's principal place of business was at the hospital.

> In terms of importance the principal place or focal point of petitioner's business was clearly the hospital. Petitioner diagnosed and treated injuries and illnesses, and consulted with patients, at the hospital. As a practicing physician, the hands-on treatment of patients is the essence of petitioner's profession. Following up on patients whom he had treated was unquestionably an important part of his duties as a physician. Continuing education in a rapidly developing and changing area of medicine such as emergency care is also clearly essential. Nevertheless, we do not find that petitioner's activities conducted in his home office were of sufficient importance to make it his principal place of business under section 280A(c)(1)(A).
> We have considered the fact that the hospital did not provide petitioner with adequate office space in which to read and study and to perform all patient follow up to the extent necessary. Furthermore, petitioner needed space in which to maintain corporate records. Nevertheless, these facts do not dissuade us from our conclusion that the hospital was the focal point of petitioner's trade or business. Many professions require some work at home, but this does not make the home office the taxpayer's principal place of business. Although his home office was appropriate and helpful, that is simply no longer the standard in light of the desire of Congress to restrict and clarify home office deductions via enactment of section 280A. [*Pomarantz v. Commissioner,* T.C. Memo. 1986-461, 52 T.C.M. 599, 602, 55 P-H Memo T.C. par. 86,461 at 2131.]

In affirming our opinion the Ninth Circuit held:

> Without adopting a specific standard, we believe that under any of these tests, the hospital, rather than the home, was Dr. Pomarantz's principal place of business. He consistently spent more time on duty at the hospital rather than at home. The essence of his profession is the hands-on treatment of patients which he did only at the hospital and never at home. Finally, he generated income only by seeing patients at the hospital not studying or writing at home. His home office was not his principal place of business within 26 U.S.C. §280A(c)(1)(A). [*Pomarantz v. Commissioner,* 867 F.2d at 497-498.]

The majority attempts to distinguish *Pomarantz* by saying that Dr. Pomarantz "spent an insubstantial amount of time in his home office." (Majority opinion at 27.) Neither this Court nor the Ninth Circuit Court of Appeals found that Dr. Pomarantz spent an insubstantial amount of time in his home office. The Ninth Circuit simply observed that Dr. Pomarantz "spent *more* time on duty at the hospital rather than at home. * * * " *Pomarantz v. Commissioner,* 867 F.2d at 497. (Emphasis added.) After describing

the various activities Dr. Pomarantz performed in his home office, we found as a fact that "In certain weeks the time required in these additional [home office] activities surpassed the amount of time petitioner spent treating patients at the hospital. In most weeks, however, and as an average, petitioner spent more time per week working shifts at the hospital than working in his home office." *Pomarantz v. Commissioner,* T. C. Memo. 1986-461, 52 T.C.M. at 600-601, 55 P-H Memo T.C. at 2129. This finding does not indicate in any way that Dr. Pomarantz' home office time was insubstantial. *Pomarantz* cannot be distinguished on the basis suggested by the majority, and the majority makes no attempt to draw any other distinctions.

In two recent unpublished opinions, the Sixth Circuit Court of Appeals seems to have adopted the same standards for purposes of section 280A as the Ninth Circuit. *Kisicki v. Commissioner,* 871 F.2d 1088 (6th Cir. 1989), affg. a Memorandum Opinion of this Court; *Dudley v. Commissioner,* 860 F.2d 1078 (6th Cir. 1988), affg. a Memorandum Opinion of this Court.

The majority holds that the principal place of business for a doctor who performs all medical services at the hospital and spends a lesser amount of time performing his administrative and billing activities in his home, is the place where administrative and billing activities are carried out. This new test appears to be an insupportable and unexplained reincarnation of the "focal point" test that merely shifts the focus from the place where the taxpayer meets and deals with his patients, customers, students, audience, etc., to the place where administrative and billing activities are performed.

It may seem unfair to deny deductions for home office expenses that are essential to a taxpayer's business. Deductions, however, are a matter of legislative grace. Section 280A clearly disallows home office deductions unless there is a specific statutory exception. There is no exception for home office activities that are "essential" or "substantial." In enacting section 280A, Congress sought to provide definitive rules to alleviate administrative burdens inherent in trying to distinguish between business and personal expenses. *Baie v. Commissioner,* 74 T.C. 105, 108-109

(1980). Surely, Congress anticipated that the effect of section 280A would be to deny deductions to some taxpayers despite the business necessity of activities performed at home. We are not free to disregard a specific, albeit sometimes harsh, statutory restriction on home office deductions by superimposing our own concept of what the law should be. *Baie v. Commissioner, supra* at 110.

The majority overrules precedent in this Court on the basis of prior reversals and then fails to adopt the only other test found acceptable by the four circuit courts of appeals mentioned. The majority provides no criteria for comparing a taxpayer's several places of business in order to determine which is the "principal place of business."[5] I would apply the test adopted by the Second and Seventh Circuit Courts of Appeals, which has also been used by the Sixth and Ninth Circuits. Under that test, we must determine the place where the dominant portion of the taxpayer's work is accomplished. Under that test, petitioner is not entitled to a home office deduction.

NIMS, CLAPP, and PARR, *JJ.,* agree with this dissent.

---

[5]Principal means "Chief; leading; most important or considerable; primary. Highest in rank, authority, character, importance, or degree." Black's Law Dictionary, p. 1073 (5th ed. 1979).