LYNN CRAWFORD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Crawford v. Commissioner
Docket No. 1380-90
United States Tax Court
T.C. Memo 1993-192; 1993 Tax Ct. Memo LEXIS 194; 65 T.C.M. (CCH) 2540; April 29, 1993, Filed *194 Decision will be entered under Rule 155. For petitioner: Robert B. Perry. For respondent: Amy M. Smith and Audrey M. Morris. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's Federal income tax for the calendar years 1983, 1985, and 1986 in the amounts of: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
6653(a)(2)
6661
1983
$ 6,593
$ 329.65
[1]
$ 1,648.25
1985
14,579
728.95
[1]
3,644.75
1986
10,329
$ 516.45
[1]
[1]
2,582.25
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for decision: (1) Whether petitioner is entitled to a deduction for 1985 and 1986 of expenses for maintaining *195 an office in his home; (2) whether petitioner is entitled to deduct in 1985 and 1986 the cost of uniforms and the cost of laundering uniforms and, if so, the amount of the deductions; (3) whether petitioner is entitled to deduct in 1983, 1985, and 1986 expenses claimed to be related to an automobile restoration activity; (4) whether respondent erroneously disallowed itemized deductions claimed by petitioner in 1983; (5) whether petitioner is entitled to deduct as a medical expense in 1985 and 1986, the cost of certain foods he consumed as part of a medical diet; (6) whether petitioner is entitled to a charitable contribution deduction in 1986, and, if so, the amount deductible; (7) whether petitioner is entitled to deduct the cost of books and continuing education in 1985 and 1986; (8) whether petitioner is entitled to deduct in 1985 and 1986 depreciation of a library; (9) whether petitioner is entitled to deduct in 1986 the cost of medical supplies; (10) whether petitioner is entitled to deduct in 1986 expenses related to a telephone; (11) whether petitioner is entitled to deduct in 1985 and 1986 the expense of equipment purchased for use in his medical practice; (12) whether petitioner *196 is entitled to deduct in 1986 travel expenses incurred while looking for a job; (13) whether petitioner is entitled to deduct in 1985 and 1986 car and truck expenses related to his medical practice; (14) whether petitioner is entitled to deduct in 1985 and 1986 depreciation on an automobile used in his medical practice; (15) whether petitioner is liable for the additions to tax for negligence under section 6653(a)(1) and (2) for the years 1983 and 1985, and under section 6653(a)(1)(A) and (B) for 1986; and (16) whether petitioner is liable for the additions to tax for a substantial understatement of income under section 6661 for each of the years 1983, 1985, and 1986. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in Dallas, Texas, at the time of the filing of his petition in this case. Petitioner prepared and filed Federal income tax returns for the taxable years 1983, 1985, and 1986. Petitioner received his medical degree in 1978. During the fall of 1979 petitioner began to practice medicine in Dallas, Texas. Petitioner's medical practice was basically a walk-in clinic where he did emergency room type work. Around the *197 end of 1983 petitioner closed his medical practice. During 1985 and 1986 petitioner worked as an independent contractor (the medical practice) providing emergency medical services to three or four hospitals in the Dallas area. Petitioner contracted to render services to hospitals at Garland, Terrell, Cleburne, Mesquite Community, and Weatherford, Texas. The hospital at Cleburne is about 87 miles from Dallas. The hospital at Weatherford is over 100 miles from Dallas. During 1985 and 1986, petitioner was not a member of the official staff of any of the hospitals. None of the hospitals provided petitioner an office. Petitioner's duties at the hospitals involved being present in the emergency room at the hospital to handle any problems that might arise. For example, he might treat patients who had been in an automobile accident or patients who only had a simple sore throat. The work petitioner did for patients at the hospitals would sometimes require follow-up work. Petitioner normally would either refer the patient to another doctor for this work or would do the follow-up work at an office he maintained at his home (petitioner's home office or the home office). The follow-up *198 work was considered part of the services petitioner was to perform under his contracts with the hospitals. Therefore, petitioner was not paid an additional amount for any of the services he performed for patients at his home office. Petitioner, under his agreements with the hospitals, could use the hospital facilities to do the follow-up work or could do it at his home office. In addition to using his home office to do follow-up work for patients, petitioner used it for correspondence and other activities related to his medical practice. The home office was close to the entrance of petitioner's house and was the largest room in the house. The home office comprised about 20 percent of the total square footage of petitioner's house. The home office contained examination tables with partitions for privacy, storage cabinets for surgical tools and medicines, and a small waiting area with chairs that was separated from the examination tables. At times, other equipment was present in petitioner's home office. Patients' records and business records were stored in the home office. Petitioner estimated that he spent 3 to 4 hours in the home office for every 10 hours spent working at *199 a hospital. On the 1985 and 1986 returns, petitioner deducted the following items related to the home office: Description of deduction
1985 1986 Depreciation of house
$ 1,346
$ 2,176
Utilities
2,171
Mortgage interest
1,422
These deductions comprised for 1985 and 1986 petitioner's home office deduction. Respondent disallowed all these deductions asserting that the deductions represent expenses related to the cost of a home office, which petitioner is not eligible to take. Sometime in March or April 1988 an Internal Revenue agent (the agent) came to petitioner's house to inspect the home office. Upon arriving at petitioner's house, the agent learned that in February 1988 all of petitioner's equipment in the home office was stolen. Petitioner did not file a police report or an insurance claim on the stolen equipment. In the early eighties petitioner decided to start a car and truck restoration activity. His decision to start the restoration activity was influenced by two factors. The first factor was the complexity of the cars being produced in the early eighties and the fact that cars were being made in such a way as to reduce an owner's ability to do repair *200 work. Petitioner believed that this fact would cause people to keep cars longer and, therefore, the older cars would eventually need to be restored. The second factor was petitioner's background. Petitioner's father was a vocational agriculture instructor and a shop teacher. Petitioner grew up learning how to work on cars and do other things such as metal work and welding. While in medical school, petitioner studied audio engineering and applications to integrated circuitry which is helpful in working on electronic ignitions. Petitioner started the restoration activity in 1982. The restoration activity was located on land owned by petitioner's father in Coushatta, Louisiana, which up until 1986, was about a 5-hour drive from petitioner's home. In 1986 a freeway was built that cut the travel time from Dallas to Coushatta down to about 3-1/2 hours. Petitioner put the building utilized by the restoration activity up as collateral against rent so that if the restoration activity failed the building went to petitioner's father. He paid his father no rent for the land. In the restoration activity, petitioner not only worked on cars that he owned but he also worked on cars owned *201 by others. The amount of time petitioner spent working in the restoration activity varied from month to month. During a typical month petitioner would spend approximately 3 weekends or possibly a week and a weekend working in the restoration activity. A weekend of working in the restoration activity for petitioner usually included work on Friday, Saturday, and Sunday. On Sunday he would attend church with his parents. In 1983, petitioner purchased an Audi and a Jeep for use in the restoration activity. During certain periods, petitioner employed workers to assist in the restoration activity. Petitioner reported the income and expenses from the restoration activity on Schedule C (Profit or (Loss) From Business or Profession) of his income tax returns. For the years in issue, petitioner reported losses from the restoration activity and other taxable income as follows: Year
Loss from restoration activity
Other taxable income
1983
($ 26,024.21)
$ 29,435.20
1985
(7,878.04)   26,581.51
1986
(6,278.91)   47,968.68
Only in 1985 did petitioner report any receipts or sales in the restoration activity. The amount of the sales in 1985 was $ 5,145, with $ 1,104.36 *202 being reported as the cost of goods sold. During the years in issue, petitioner took the following depreciation deductions in conjunction with the restoration activity: Year
Depreciation deduction
1983
$ 13,950.03
1985
7,249.52
1986
867.56
As part of the $ 13,950.03 depreciation deduction taken on the 1983 return, petitioner took a section 179 deduction for an Audi which was noted on the return as "Car for Restoration". The depreciation deduction for 1983 also included a section 179 deduction for a 1983 Jeep and amounts deducted as cost recovery on the 1983 Jeep, a 1973 truck, a 1968 Bronco, and what is described as "parts, tools". In the notice of deficiency sent to petitioner, respondent disallowed the losses reported from the restoration activity with the explanation that the restoration activity was not engaged in for profit. The only records kept by petitioner for his medical practice and the restoration activity were in spiral notebooks in which entries were not generally made at the time of the transaction. During 1985 and 1986, petitioner also operated a television, audio, and electronic microwave business called Microwave Receive Only. In 1985 petitioner *203 began to have symptoms that he thought were due to stress. Petitioner was examined by a doctor, who was a co-worker, and diagnosed with hypoglycemia, a condition caused by low blood sugar. Petitioner began a special diet to help control the hypoglycemia. In the notice of deficiency, respondent made adjustments to the itemized deductions petitioner claimed in 1983, 1985, and 1986. The itemized deductions disallowed were as follows: Year
Amount
1983
$ 1,486
1985
241
1986
4,701
OPINION The initial issue for our determination is whether petitioner may deduct expenses related to use of a portion of his residence as a home office. Ordinary and necessary business expenses are deductible under section 162. [1] *204 Section 280A [2] limits the situations in which a deduction of expenses related to a home office are allowable. (a) GENERAL RULE. -- Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. (b) EXCEPTION FOR INTEREST, TAXES, CASUALTY LOSSES, ETC. -- Subsection (a) shall not apply to any deduction allowable to the taxpayer without regard to its connection with his trade or business (or with his income-producing activity). (c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE. -- (1) CERTAIN BUSINESS USE. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, *205 or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.
Section 280A was enacted by section 601 of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1569. Prior to the adoption of section 280A, the only statutory limitation on the deductibility of expenses attributable to a home office was the requirement that the expenses represent an ordinary and necessary expense under section 162. Expenses of a home office were deductible if they were found to be "appropriate and helpful" to the taxpayer's business. See Newi v. Commissioner, 432 F.2d 998, 1000 (2d Cir. 1970), affg. T.C. Memo. 1969-131. The "appropriate and helpful" standard was considered to be too lenient and to allow the deduction of personal, living, and family expenses. S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 185. *206 Section 280A was enacted to have definitive standards govern the deductibility of home office expenses. Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976 (J. Comm. Print 1976), 1976-3 C.B. (Vol. 2) 1, 151. Section 280A imposes a heavy burden upon taxpayers to establish the deductibility of expenses related to a home office. Pomarantz v. Commissioner, 867 F.2d 495, 496 (9th Cir. 1988), affg. T.C. Memo. 1986-461. Section 280A(a) provides the general rule disallowing the deduction of expenses associated with home offices. The following three exceptions to the general rule are provided for in section 280A(c): (1) A portion of the dwelling unit is used exclusively on a regular basis as the taxpayer's principal place of business; (2) a portion of the dwelling unit is used exclusively on a regular basis as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business; or (3) the office is a separate structure not attached to the dwelling unit and that structure is used in connection *207 with the taxpayer's trade or business. Since the record is clear that petitioner's home office was not in a structure separate from his residence, petitioner must establish either that his home office is his principal place of business or that his home office was used exclusively as a place of business for petitioner to meet with patients in the normal course of his business. Neither section 280A itself nor the legislative history of that section provides much guidance in determining whether a taxpayer's home office is his principal place of business. However, numerous cases hold that a taxpayer can have only one principal place of business for each trade or business in which he is engaged. Pomarantz v. Commissioner, supra; Curphey v. Commissioner, 73 T.C. 766, 775-777 (1980). In some cases this Court used the so-called "focal point test" to determine the situs of a taxpayer's principal place of business. Under this test the place where goods and services are provided to customers and where revenues are generated is a taxpayer's principal place of business. Jackson v. Commissioner, 76 T.C. 696, 700 (1981). *208 The focal point test has been criticized by circuit courts. See Meiers v. Commissioner, 782 F.2d 75 (7th Cir. 1986), revg. T.C. Memo. 1984-607; Weissman v. Commissioner, 751 F.2d 512 (2d Cir. 1984), revg. T.C. Memo. 1983-724; Drucker v. Commissioner, 715 F.2d 67 (2d Cir. 1983), revg. 79 T.C. 605 (1982). In Soliman v. Commissioner, 94 T.C. 20 (1990), affd. 935 F.2d 52 (4th Cir. 1991), revd. 506 U.S.    , 113 S. Ct. 701 (1993), after recognizing the criticism by various Courts of Appeals of the focal point test, we abandoned that test for a facts and circumstances test. Soliman v. Commissioner, supra, involved an anesthesiologist who worked at three hospitals. The taxpayer was not provided an office at any of the three hospitals. He converted a room in his apartment into an office. On average, the taxpayer spent 2 to 3 hours a day working in the home office, but did not meet with patients there. The taxpayer *209 deducted expenses related to this office. Following respondent's disallowance of the claimed deductions, a petition was filed in this Court. We held for petitioner based on the following factors: (1) The home office was essential to the taxpayer's trade or business; (2) the taxpayer spent a "substantial" amount of time working at the home office; and (3) the hospitals did not provide an office to the taxpayer. Soliman v. Commissioner, supra. Our decision was affirmed by the Fourth Circuit in Soliman v. Commissioner, 935 F.2d 52 (4th Cir. 1991), affg. 94 T.C. 20 (1990), revd. 506 U.S.     113 S. Ct. 701 (1993). In reversing our decision, the Supreme Court focused on the meaning of "principal place of business" and rejected the use of the availability of alternative office space as a factor in determining the principal place of business. The Supreme Court concluded that where a taxpayer carries on business at more than one location, the principal place of business is "the most important or significant place for the business". The determination of a taxpayer's principal place of business *210 depends on the facts of each case, but there are two primary considerations: (1) The relative importance of the activities performed at each business location, and (2) the time spent at each place. The Supreme Court, although refusing to adopt the focal point test as the conclusive test for the principal place of business, gave great weight in deciding the relative importance of the activities performed at each business location to the place where goods and services were delivered. The importance of the activities performed at each location depends on the characteristics of the business or trade involved. Furthermore, the Supreme Court noted that an important factor is where the taxpayer confers with a patient, and such a place will be given great weight in determining the place where the most important functions are performed. If the comparison of functions does not decide the issue, then the comparison of the time spent at home with the time spent at other places where the taxpayer conducts his business is an especially important consideration. Even though petitioner did treat some patients in his home office, we conclude that petitioner's home office was not his principal *211 place of business. The record does not establish that the work performed at the home office was as important as the work performed at the hospital. Instead the evidence indicates that the more important functions were performed at the hospitals. Petitioner's medical practice was providing medical care to patients. Most of the services petitioner performed for the patients were performed at the hospitals with some follow-up at the home office. The record is inconclusive as to the amount of follow-up work performed at the home office, but it is clear that the majority of petitioner's medical work took place at the hospitals. Furthermore, the evidence presented establishes that petitioner spent much more time working at the hospitals than he did in the home office. Petitioner does not argue on brief that his home office was used exclusively as a place of business which is used by patients in meeting with petitioner in the normal course of his business and thus qualifies under the second exception of section 280A. However, since the record shows that petitioner may have treated patients in his home office, we will discuss this exception. Incidental or occasional meetings with *212 patients are not enough to qualify the home office for this exception. S. Rept. 94-938, p. 148-149 (1976), 1976-3 C.B. (Vol. 3) 186-187; H. Rept. 94-658, at 161 (1975), 1976-3 C.B. (Vol. 2) 853. As with all factual issues, petitioner bears the burden of proof as to the frequency of the meetings. Rule 142; Welch v. Helvering, 290 U.S. 111 (1933). The record establishes that petitioner did follow-up work on some patients at his home office. What the record does not show is the frequency and regularity of the visits by patients to petitioner's home office or even whether there were any such visits by patients in the years here in issue. For this reason, we find that petitioner has failed to prove that his home office was regularly used for meeting patients in the normal course of his business. See Jackson v. Commissioner, 76 T.C. 696 (1981). Some of the hospitals required petitioner to obtain special medical equipment and uniforms. At least one hospital required that petitioner wear business suits while working. At other locations petitioner was required to wear *213 white suits, which were not suitable for wear at other places. On his 1985 return, petitioner deducted $ 2,737.87 as the cost of clothes and uniforms for his medical practice and $ 651 for the cost of laundry of the uniforms. Of these two deductions, respondent allowed $ 596 of the laundry expense and disallowed the remaining $ 2,793. Of the $ 2,737.87 petitioner deducted as cost of uniforms, $ 2,000 represented the cost of business suits which he was required to wear at some hospitals. Petitioner has conceded that the deduction of the cost of the business suits was improper, but claims that $ 940 should be allowed as a deduction for uniforms. To support the deduction of $ 940, petitioner presented a list of expenditures for uniforms in 1985 which he prepared, which included some purchases not included by petitioner in the cost of the uniform deduction on his 1985 return. Petitioner stated that he used receipts to verify each purchase. On his 1986 return, petitioner deducted $ 92.40 for clothes and uniforms. Respondent disallowed this claimed deduction. To support the deduction on the 1986 return, petitioner presented copies of two checks he wrote allegedly to purchase uniforms. *214 One of the checks presented to verify the 1986 purchases was for a purchase from Shepler's Clothing Store, which according to petitioner's testimony is a western clothing store. Petitioner was unable to remember what was purchased at Shepler's. The other check was made out to Cleburne Memorial Hospital in the amount of $ 25.90 and marked for uniforms. The expense of uniforms is deductible under section 162(a) if: (1) The uniforms are of a type specifically required as a condition of employment; (2) the uniforms are not adaptable to general usage as ordinary clothing; and (3) the uniforms are not so worn. Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958). The only issue here is whether the uniforms meet the second requirement. Almost all of the uniforms petitioner purchased were scrubs. Unlike the business suits, the scrubs were suitable only to wear while at the hospitals. Petitioner has substantiated the purchase of $ 940 of uniforms in 1985 and $ 25.90 worth of uniforms in 1986. Therefore, we hold that petitioner is entitled to deduct these amounts as a business expense in addition to the $ 596 of laundry expense allowed by respondent. *215 We sustain respondent's disallowance of the balance of petitioner's claimed deduction for uniform expense. Petitioner is entitled to deduct expenses related to his automobile restoration activity only if he can establish that the expenses were incurred in carrying on a trade or business or in an activity engaged in for the production of income. Secs. 162, 212. To establish that the automobile restoration activity was a trade or business, petitioner must show that the activity was engaged in for profit. Sec. 183; Rule 142(a); Taube v. Commissioner, 88 T.C. 464, 478 (1987); Flowers v. Commissioner, 80 T.C. 914, 931 (1983). A similar for-profit showing is necessary to establish that the activity was engaged in for the production of income. Section 183 [3] provides, generally, that, if an activity is not engaged in for profit, only the deductions which are allowable without regard to whether the activity is engaged in for profit shall be allowed. An exception in section 183(b)(2) provides that deductions, which would otherwise not be deductible under the general rule, shall be deductible without regard to whether the *216 activity is engaged in for profit, "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable" regardless of whether the activity is engaged in for profit. *217 An activity is engaged in for profit under section 183 if the taxpayer has an "actual and honest objective of making a profit". Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 644 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The expectation of profit does not have to be reasonable, but must be a bona fide expectation of profit. Dreicer v. Commissioner, supra at 645. The determination of whether an activity is engaged in for profit is factual. Keanini v. Commissioner, supra at 46; sec. 1.183-2(a), Income Tax Regs. Some of the factors to be considered in determining whether an activity is engaged in for profit include: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; *218 (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity. Sec. 1.183-2(b), Income Tax Regs. No single factor is determinative. Keanini v. Commissioner, supra at 47; sec. 1.183-2(b), Income Tax Regs. Greater weight is given to the objective facts than to the taxpayer's statements of intent. Keanini v. Commissioner, supra at 46; sec. 1.183-2(b), Income Tax Regs.
Based on the record in this case, we conclude that petitioner failed to prove that he engaged in the restoration activity with an actual and honest profit objective. Accordingly, respondent's disallowance of expenses related to the restoration business is sustained, except as allowable under section 183(b). Petitioner failed to show that the restoration activity was conducted in a businesslike manner. According to petitioner's testimony, he kept an inventory of parts to be used, but not of the cars being restored. However, he failed to produce even the parts inventory *219 at the trial. Petitioner has not substantiated any of the deductions claimed as part of the restoration activity. Petitioner did not keep a record of the cars purchased to restore, nor did he have the titles put in his name. No evidence was presented indicating whether petitioner did an analysis of the profitability of the restoration activity prior to commencing the activity or after beginning operation of the restoration activity ever completed a budget. Upon review of the 1983 return, in particular Form 4562 (Depreciation and Amortization) for the restoration activity, it appears that petitioner took depreciation deductions on inventory. Inventory is not depreciable property. Sec. 1.167(a)-2, Income Tax Regs.
Petitioner located the restoration activity in Louisiana because "It was close to where [his] parents were". Petitioner never explained why locating near his parents was of importance to the restoration activity or would be conducive to a profit from that activity. Petitioner made no profit from the restoration activity in any of the years here in issue. Petitioner testified that he made a profit in 1984, but had no records to substantiate this claim. Petitioner *220 did not have the retained copy of his 1984 tax return, and respondent had apparently destroyed the original 1984 return at the time of trial when petitioner requested it. If petitioner was serious about making a profit from the restoration activity, it would seem that he would have located it closer than 3-1/2 to 5 hours away from his home. Petitioner testified that he was a very busy person with many activities and little time to waste. Even with his busy schedule, he decided to locate this operation in a place that took 3-1/2 to 5 hours driving time each way. It also happens that the location of the restoration activity is close to his parents' home. Without further explanation, it appears that the location of the restoration activity was for petitioner's personal convenience in visiting his parents and not for the profitability of the activity. We hold that petitioner's restoration activity was not an activity engaged in for profit. Therefore, petitioner is not entitled to any deduction in connection with the restoration activity except those deductions allowed under section 183(b). Petitioner included as part of his 1983 return, which was timely filed, an executed Form *221 5213 (Election to Postpone Determination with Respect to the Presumption that an Activity Is Engaged in for Profit). The Form 5213, which applied to the restoration activity, served to extend the period of limitations for determinations as to the profitability of the restoration activity until the end of the assessment period for the 1985 tax year. In January 1989, petitioner and an agent of respondent executed a Form 872 (Consent to Extend the Time to Assess Tax), which purported to extend the time to assess tax for the year 1983 until December 31, 1989. In Crawford v. Commissioner, 97 T.C. 302 (1991) (Crawford I), we held that the Form 872 extended the period of limitations only as to amounts of deficiency arising from a determination of whether the restoration activity was entered into for profit. Petitioner maintains that respondent has wrongfully determined that part of the medical deductions claimed as itemized deductions in 1983 are not deductible because the medical deductions represent the cost of a diet which is not deductible. Such a determination, according to petitioner, is in violation of Crawford I since the only issue open for 1983 *222 was whether the restoration activity was engaged in for profit. Petitioner is mistaken in his claim. The amount of the disallowed itemized deductions for 1983 represents primarily a decrease in the amount of the allowable medical expense deduction of 5 percent of petitioner's adjusted gross income which is increased by the disallowance of the losses from the restoration activity. Respondent however did disallow $ 240 of the claimed medical expense deduction in 1983 for lack of substantiation which is incorrect under our holding in Crawford I. We therefore hold that petitioner's medical expense deduction as determined by respondent for 1983 should be increased by $ 240. Respondent correctly increased petitioner's State sales tax deduction in 1983 resulting from the increase in adjusted gross income. The amount of the disallowed medical expense deduction for 1985 represents entirely a decrease in the amount of the allowable medical expense deduction by 5 percent of adjusted gross income. Respondent determined an increase in the allowable amount of the State sales tax deduction, and an increase in the mortgage interest deduction taken as an itemized deduction in the year 1985. *223 In the notice of deficiency for the year 1986, respondent specifically disallowed all of the $ 3,481 claimed medical deduction and the $ 1,220 claimed charitable contribution deduction. Respondent asserts that the medical expense deduction represents expenditures for a diet which was substituted for petitioner's ordinary food. Section 213 [4] allows a deduction for expenses, not compensated for by insurance or otherwise, for medical care. An expenditure for medical care is narrowly defined as an expense incurred primarily for the prevention or alleviation of physical or mental defect or illness, and not an expense which is merely beneficial to the general health of an individual. Sec. 1.213-1(e)(1)(ii), Income Tax Regs. Consistent with this definition, we have held that the cost of special foods or beverages taken as a substitute for foods or beverages normally consumed by a person to satisfy his regular nutritional requirements is a personal expense which is not deductible. However, where special foods or beverages are prescribed by a physician for medicinal purposes, in addition to the normal diet of a patient, the cost may qualify as a medical expense. Harris v. Commissioner, 46 T.C. 672, 673 (1966). *224 Respondent contends that all amounts spent by petitioner for his diet were personal, nondeductible expenses under section 262. Petitioner argues that Von Kalb v. Commissioner, T.C. Memo. 1978-366, is applicable to the present case. In that case we held that the taxpayer was entitled to deduct additional expenses incurred in adhering to a prescribed diet to combat hypoglycemia. We considered "additional expenses" to be expenses in addition to those the taxpayer normally spent to satisfy her normal nutritional needs. There is no showing in this record that the special diet used by petitioner was necessary or required or prescribed by *225 a doctor. Petitioner's testimony at trial was as follows: "We did a blood test, and in fact, it was low at a time when I was having the symptoms (of hypoglycemia). And at that point, I got onto a special diet designed to control those symptoms". Petitioner testified that the special diet took the place of the food he normally would have eaten. There is no showing in the record that the cost of the special diet exceeded the cost petitioner would have incurred to fulfill his normal nutritional needs. The only evidence in this record of the cost of the special diet is notations in the spiral notebook petitioner kept setting out the amount of checks written in 1986 to purchase food for the special diet. Some of the notations contain the place to which the check was drawn. These places include Kroger, Albertsons, and Sam's Wholesale Club. Based on the foregoing, we hold that petitioner has failed to prove that the amount deducted for the cost of the diet exceeded the amount he would have spent for normal nutritional needs. See Harris v. Commissioner, supra; Taylor v. Commissioner, T.C. Memo. 1982-114; Flemming v. Commissioner, T.C. Memo. 1980-583. *226 Therefore, we sustain respondent's disallowance of petitioner's claimed deduction as a medical expense in 1986 of $ 3,481. Certain deductions were disallowed by respondent for lack of substantiation. A taxpayer is responsible for substantiating the amount of a deduction claimed, and if the taxpayer fails to do so, respondent is justified in denying the deduction. Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Section 6001 and the income tax regulations require a taxpayer to maintain adequate records to substantiate claimed deductions. Even in the absence of adequate substantiation, we generally may, if convinced by the evidence, estimate the amount of deductible expenses incurred. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Such an estimate must, however, have some reasonable evidentiary basis. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Respondent disallowed petitioner's claimed $ 1,220 charitable contribution deduction for 1986. At the trial, petitioner failed to offer any evidence to substantiate *227 the charitable contribution deduction. In his reply brief, petitioner stated that he thought respondent was no longer contesting this claimed deduction. There is no evidence in this record supporting petitioner's contention that respondent conceded the issue. Petitioner bears the burden of proving that the claimed charitable contribution deduction is allowable. Rule 142; Welch v. Helvering, 290 U.S. 111 (1933). Petitioner has failed to meet this burden, and therefore respondent's disallowance of the claimed charitable contribution deduction is upheld. In 1985 petitioner deducted the following amounts as business expenses for his medical practice: Description
Amount Books
$ 223.65  Education in field of work
1,516.00
Depreciation of library
628.91
Total deduction taken
$ 2,368.56
In 1986 petitioner deducted the following amounts as business expenses for his medical practice: Description
Amount Books
$ 158.63  Depreciation of library
955.44
Total deduction taken
$ 1,114.07
Respondent concedes the deduction of $ 224 for books and $ 385 of the education expense deduction claimed in 1985, but disallowed the remaining *228 $ 1,750 of the remaining deduction taken in 1985 and all of the deduction taken in 1986. Generally, educational expenses are deductible as an ordinary business expense if the education: (1) maintains or improves skills required by the individual in his employment or other trade or business, or (2) meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to retention by the individual of an established employment relationship, status, or rate of compensation. Sec. 162; sec. 1.162-5(a), Income Tax Regs. Educational expenses are not deductible if the education is necessary to meet minimum educational requirements for qualification in an individual's employment or other trade or business, or if the education is part of a program of study that will qualify the individual for employment in a new trade or business. Sec. 162; sec. 1.162-5(b)(2) and (3), Income Tax Regs.
The record contains few details concerning the deductions in 1985 and 1986 of book expenses, educational expenses, and depreciation of library. There are two lists of expenditures in evidence that make up the amount of the deductions taken *229 in 1985 and 1986 for continuing education and books. The list of the 1985 expenditures contains expenditures for books totaling $ 363.58 and a list for continuing educational courses totaling $ 1,637.27. The list of expenditures for books contains two sets of expenditures. The first set totals $ 323.65, but had been incorrectly marked $ 223.65, which is the amount that petitioner took as a deduction on the 1985 return. Added to the first set was the second set which brought the total amount of the expenditures to $ 363.58. The total amount of expenditures during 1985 that petitioner claimed at the trial were for educational courses is $ 1,637.27. On his 1985 return, petitioner took a deduction of $ 1,516. No explanation was given for this discrepancy. Of the expenditures listed for continuing educational courses, $ 1,252.27 represents repayment of the principal amount of a loan marked "Medical School Loan". Petitioner testified that the amounts marked for repayment of a medical school loan were amounts of principal paid on a loan he obtained in order to attend a continuing education class in 1985. The rest of the expenditures listed as for continuing education courses represents *230 $ 385 paid to the American College of Medical Physicians, which respondent admits is properly deductible. Given the state of the record on this issue, we hold petitioner has failed to prove that he is entitled to deduct in 1985 and 1986 the amounts for books and education in his field of work in excess of the amounts conceded by respondent. Petitioner presented neither evidence of the existence of a library nor an explanation as to how the deductions for depreciation of the library in 1985 and 1986 were calculated. Thus, petitioner has failed to meet his burden and respondent's disallowance of the claimed depreciation of library expense is upheld. In 1986 petitioner claimed a $ 560 deduction for medical supplies (medical supplies deduction) that he claims are ordinary and necessary business expenses under section 162. Respondent disallowed the entire amount of this claimed deduction on the ground of lack of substantiation. To substantiate the medical supplies deduction, petitioner presented a list he had prepared and two canceled checks. Petitioner testified that the deduction represents expenditures incurred in his medical practice. Based on the two canceled checks and petitioner's *231 testimony, we conclude that petitioner has substantiated the claimed deduction of $ 560 for medical supplies as a business expense. Petitioner claimed a $ 278 home office expense deduction in 1986. Respondent disallowed the entire home office expense deduction. Petitioner presented a list he had prepared of expenditures to substantiate the claimed deductions and a copy of each of four checks with which he testified some of the purchases were made. The amounts claimed as home office expenses include amounts for poinsettias, glass and frame, plexiglass, and some other items. Petitioner has failed to show the connection with his medical practice of the items the cost of which he claims are deductible, and has also failed to adequately substantiate the expenditures. In 1986 petitioner claimed a $ 1,412 deduction under section 162(a) for telephone expenses attributable to his emergency room practice. Respondent disallowed $ 901 of this expense. According to petitioner, the $ 1,412 represents the cost of phone calls to prospective contractors and communications with other physicians about patients or other related matters. Petitioner did not produce any telephone bills or canceled *232 checks to substantiate the claimed telephone expense deduction, and petitioner did not testify as to how much the telephone was used for personal use, as compared to business use. Instead, petitioner presented a list he had prepared of the telephone expenses. We hold that petitioner has failed to meet his burden of proof as to the $ 901 of claimed telephone expenses disallowed by respondent. Respondent's determination as to the telephone expense is upheld. On Forms 4562 (Depreciation and Amortization) attached to both his 1985 and 1986 returns, petitioner elected under section 179 to expense $ 3,169.38 of equipment purchased in 1985 and $ 3,278.45 of equipment purchased in 1986 (these two section 179 deductions are collectively referred to as the section 179 deductions). Respondent disallowed the section 179 deductions on the ground of lack of substantiation. Section 179 allows a taxpayer to elect to expense in the year placed in service the cost of section 179 property acquired for use in the active conduct of a trade or business. Sec. 179(a). The aggregate annual deduction allowed under section 179 is limited to $ 10,000. Sec. 179(b)(1). Section 179 property is defined *233 as section 38 property which is acquired by purchase for use in a trade or business. Sec. 179(d)(1). To substantiate the purchases of the section 179 property, petitioner produced a list which he had prepared for 1985 and 1986 of the equipment purchased, the cost of which he deducted under section 179, and copies of canceled checks which petitioner testified were used to purchase the equipment. The equipment listed included such items as a nebulizer, a hyperfactor, a tonometer, and other medical equipment. Several of the checks for 1985 are made payable to "cash". Petitioner explained that this was done because he bought the equipment from individuals who required him to pay in cash. The only checks which indicate items purchased are the following: Check no.
Payee
Item shown purchased
Amount
1210
Cash
Swig. Inst.
$ 100.00  1316
Cash
Otoscope
150.00
1327
Cash
Tonometer
150.00
1396
Cash
Swig. Inst.
50.00
1427
Neal Fisk
(illegible)
685.00
1446
Neal Fisk
Oto-Ophalmoscope
310.80
Total  $ 1,445.80
The remaining checks are made to "cash" and have no notation as to the purpose for which each check was drawn. Petitioner, in his testimony, tried to tie the *234 checks made to "cash" with no notation to his memory of equipment purchased. He did not have the equipment at the time of the trial. He testified the equipment had been stolen but gave no further explanation. We therefore conclude that petitioner has substantiated only $ 1,445.80, which is the total of the checks that indicate purchases made with these funds as listed above. We therefore sustain respondent's disallowance of the deduction of section 179 equipment claimed by petitioner, except to the extent of $ 1,445.80. In 1986 petitioner deducted $ 600 as a business-related expense of travel to Missouri to look for a job (the travel expense). Respondent disallowed all of the claimed travel expense deduction. The $ 600 was comprised of two checks made payable to "cash", the proceeds of which petitioner claims were used to fund the trip to Missouri. Petitioner claims the reason he cashed the checks was that he needed money for the trip, and he did not have a credit card. According to petitioner's testimony, the proceeds from the two checks were kept in the glove compartment of his car for use during the trip. Section 274(d) states that a taxpayer is not allowed a deduction *235 under section 162 for any travel expense unless the taxpayer has substantiation by adequate records or by sufficient corroborating evidence. Under section 274(d), the following elements must be substantiated: (1) Amount of such expense; (2) time of travel; (3) place of travel; and (4) business purpose of the expense. Sec. 1.274-5(b)(2), Income Tax Regs. The regulations make it clear that section 274(d) supersedes the doctrine of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), and that a deduction for travel and entertainment must be supported by more than approximations or unsupported testimony of a taxpayer. Sec. 1.274-5(a), Income Tax Regs.[5]
The record is clearly inadequate to substantiate the travel expense in an appropriate manner under section 274(d) and the regulations issued pursuant thereto. The evidence presented was that petitioner *236 took a trip, which he claims was for business purposes, and that he took $ 600 on the trip to pay expenses. The record does not list one actual expense incurred and paid by petitioner while on his trip to Missouri. Based on this record, we hold that petitioner has failed to substantiate the travel expense, and therefore we sustain respondent's disallowance of the claimed deduction. Petitioner deducted $ 8,363.76 in 1985 and $ 4,821 in 1986 as car and truck expenses related to his medical practice (the car expenses). Respondent disallowed $ 8,312 for 1985 and $ 4,780 for 1986 on the ground that the claimed car expenses represented traveling to and from petitioner's principal place of employment and, therefore, were not deductible. Petitioner presented no evidence with respect to the disallowance of this deduction. We therefore sustain the amount of respondent's disallowance of this claimed deduction. On the Schedule C for his medical practice, petitioner took depreciation deductions on his car claiming it was used for business. The amount of the depreciation deductions for petitioner's car was $ 5,396 for 1985 and $ 5,254 for 1986. Respondent disallowed all of the car depreciation *237 deductions in 1985 and $ 5,226 of the amount claimed in 1986. Section 274(d)(4) disallows any deduction for business use of certain types of property listed in section 280F(d)(4), which includes any passenger automobile (sec. 280F(d)(4)(A)(i)), unless the taxpayer establishes business use of the property by adequate records or other corroborating evidence. The record in this case contains no proof of the business use of the car. Petitioner kept no log or record of use of his automobile. Therefore, petitioner has failed to meet his burden of proof and respondent's disallowance of these claimed depreciation deductions is upheld. An addition to tax for negligence or intentional disregard of rules or regulations is imposed by section 6653(a). The amount of the addition under section 6653(a)(1) for 1983 and 1985 and section 6653(a)(1)(A) for 1986 is 5 percent of the underpayment. This addition applies if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) for 1983 and 1985 and section 6653(a)(1)(B) for 1986 provides for a further addition to tax equal to 50 percent of the interest due on the portion of *238 the underpayment attributable to negligence. Negligence encompasses any failure to reasonably attempt to comply with the Internal Revenue Code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do in a similar situation. McGee v. Commissioner, 979 F.2d 66, 71 (5th Cir. 1992), affg. T.C. Memo. 1991-510. Petitioner bears the burden of proving that he was not negligent. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Based on this record, we conclude that a part of the underpayment for each year here in issue was due to negligence, and therefore petitioner is liable for additions to tax under section 6653(a)(1) for 1983 and 1985 and section 6653(a)(1)(A) for 1986. However, we hold that petitioner was not negligent in taking a deduction for home office expenses in each year since at the time he claimed the deduction there was some support in the case law for his position. On the basis of the record, we hold that petitioner is not liable for the additions to tax under section 6653(a)(2) for 1985 and section 6653(a)(1)(B) for 1986 *239 with respect to the underpayment applicable to the disallowance of the claimed deduction for home office expenses. Based on this record, we hold that the underpayments by petitioner resulting from the other adjustments to his reported income which we have sustained, was due to negligence. The record shows that petitioner did not keep accurate records. The evidence presented at trial consisted mainly of entries in spiral notebooks, not generally made simultaneously with the transaction, instead of receipts or canceled checks. Some of the deductions petitioner took were found to be for personal items such as food and business suits. There is no evidence that petitioner acted reasonably under the circumstances. Therefore, we hold that petitioner has failed to meet his burden of proof with regard to the additions to tax under section 6653(a)(2) for 1983 and 1985 and section 6653(a)(1)(B) for 1986 with respect to the underpayments other than those resulting from disallowance of the deduction for home office expenses. See McGee v. Commissioner, supra at 71. Section 6661(a) imposes an addition to tax equal to 25 percent of the amount of any underpayment *240 attributable to a substantial understatement of income tax. An understatement is defined as the tax required to be shown on the return, less the tax actually shown on the return, reduced by any rebates. Sec. 6661(b)(2)(A). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Section 6661(b)(2)(B) provides that in determining the amount of the understatement, the total understatement is reduced by the items for which the taxpayer had substantial authority for the position taken on the return or adequately disclosed the relevant facts on the return. The burden is on petitioner to show error in respondent's determination of the addition to tax under section 6661. Rule 142(a). Petitioner claims to have had substantial authority and to have adequately disclosed on his return the facts with respect to all items from which the underpayment of tax arose. Sec. 1.6661-3(b)(1), Income Tax Regs. For substantial authority to exist for a taxpayer's position, the weight of authorities in support of the taxpayer's position must be substantial when compared to the weight of authorities supporting *241 contrary positions. Substantial authority refers to legal precedent which supports the position taken by the taxpayer. Antonides v. Commissioner, 91 T.C. 686, 702 (1988), affd. 893 F.2d 656 (4th Cir. 1990). In determining whether there is substantial authority for a taxpayer's position, the following authorities are considered: Applicable provisions of the Internal Revenue Code and other statutory provisions; temporary and final regulations construing such statutes; court cases; administrative pronouncements (including revenue rulings and revenue procedures); tax treaties and regulations thereunder, and Treasury Department and other official explanations of such treaties; and Congressional intent as reflected in committee reports, joint explanatory statements of managers included in conference committee reports, and floor statements made prior to enactment by one of a bill's managers. * * * [Sec. 1.6661-3(b)(2), Income Tax Regs.]
The substantial authority standard is less stringent than a "more likely than not" standard (that is, a greater than 50-percent likelihood of being upheld in litigation), but stricter *242 than a reasonable basis standard (the standard which, in general, prevents imposition of the section 6653(a) negligence addition). Sec. 1.6661-3(a)(2), Income Tax Regs. Courts are to give weight to authorities by the same analysis that a court would follow in evaluating the treatment of the item. If an authority is materially distinguishable from the case at issue, the authority is of little relevance. Antonides v. Commissioner, supra at 72-703; sec. 1.6661-3(b)(3), Income Tax Regs.
Petitioner claims that our opinion and the Fourth Circuit's opinion in Soliman v. Commissioner, 94 T.C. 20 (1990), affd. 935 F.2d 52 (4th Cir. 1991), revd. 506 U.S.    , 113 S. Ct. 701 (1993), qualify for use as substantial authority for the home office deduction. Soliman v. Commissioner, supra, was decided by this Court after petitioner filed his returns for 1985 and 1986 claiming the home office deduction. According to section 1.6661-3(b)(4)(iii), Income Tax Regs., substantial authority must exist at the time the return containing the item is filed or on the last day of the taxable year to which *243 the return relates. Therefore, since our opinion and the Fourth Circuit's opinion in Soliman v. Commissioner, supra, were not rendered until 1990 and 1991 respectively, under this regulation which was discussed in Antonides v. Commissioner, supra at 704 n.9, they could not be used as substantial authority for the home office deduction taken in 1985 and 1986. [6] Because of our conclusion hereinafter stated in this case as in Antonides v. Commissioner, supra, "we need not address the question" of whether the "substantial authority" must have existed at the time the return was filed. At the time of the filing of these two returns, our position as to home office deductions was that they must pass the focal point test, but as stated earlier, this test was much criticized by the Courts of Appeals which reversed several of our decisions. See Meiers v. Commissioner, 782 F.2d 75 (7th Cir. 1986), *244 revg. T.C. Memo. 1984-607; Weissman v. Commissioner, 751 F.2d 512 (2d Cir. 1984), revg. T.C. Memo. 1983-724; Drucker v. Commissioner, 715 F.2d 67 (2d Cir. 1983), revg. 79 T.C. 605 (1982). During 1986, we filed Pomarantz v. Commissioner, T.C. Memo. 1986-461, affd. 867 F.2d 495 (9th Cir. 1988), which avoided endorsing the focal point test. All of this led to our rejecting the focal point test in Soliman v. Commissioner, 94 T.C. 20 (1990), affd. 935 F.2d 52 (4th Cir. 1991), revd. 506 U.S.    , 113 S. Ct. 701 (1993). Because of all this confusion, the criticism of the focal point test, and the reversal of several of our opinions that used the focal point test, we hold that petitioner had substantial authority for claiming the deduction for home office expenses at the time of the filing of his returns for 1985 and 1986. Petitioner has shown no substantial authority for the other deductions claimed *245 to the extent we have upheld respondent's disallowance of those deductions. Many of the deductions were disallowed for lack of substantiation, and the law is clear that a taxpayer is required to substantiate claimed deductions. Also this record shows that petitioner has not adequately disclosed the tax treatment of the various items on his returns. Accordingly, we sustain the addition to tax under section 6661(a) for each of the years here in issue as to the underpayments, excluding the amounts of the underpayments attributable to the claimed home office expense deduction. Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the full deficiency.↩
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) IN GENERAL. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -- (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business * * *↩
2. SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC.↩
3. SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) GENERAL RULE. -- In the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) DEDUCTIONS ALLOWABLE. -- In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed -- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).
(c) ACTIVITY NOT ENGAGED IN FOR PROFIT DEFINED. -- For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212.↩
4. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) ALLOWANCE OF DEDUCTION. -- There shall be allowed as a deduction the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * * to the extent that such expenses exceed 5 percent of adjusted gross income.↩
5. See Sly v. Commissioner, T.C. Memo. 1989-385, supplemented by T.C. Memo. 1990-12↩.
6. See Fisher v. Commissioner, T.C. Memo. 1992-740↩.