# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

---

**HENRY COUNTY MEDICAL CENTER** )

       Plaintiff/Appellant,       )     Henry Law No. 9886

**vs.**       )

**HENRY GRONSKI, M.D.**       )     Appeal No. 02A01-9412-CV-00279

       Defendant/Appellee.       )

FILED

September 9, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE CIRCUIT COURT OF HENRY COUNTY
AT PARIS, TENNESSEE

THE HONORABLE C. CREED McGINLEY, JUDGE

For the Plaintiff/Appellant:       For the Defendant/Appellee:

David F. Hessing       William R. Neese
Paris, Tennessee       Dresden, Tennessee

**AFFIRMED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

HEWITT P. TOMLIN, JR., SR. J.

**OPINION**

This is a breach of contract action brought by Henry County Medical Center (HCMC) against Henry Gronski, M.D. (Gronski). In response, Gronski admitted the amounts owed to HCMC under the contract but claimed that he was owed a larger amount as set-off. The trial court awarded HCMC a judgment of $44,900.40 on the contract and awarded Gronski $56,204 as set-off. The court also ordered HCMC to pay Gronski's attorney's fees and accountant fees. HCMC appeals the court's award of set-off to Gronski as well as the award of attorney's and accountant fees. We affirm the trial court on all issues.

On July 19, 1991, HCMC and Gronski entered into a Net Income Guarantee Agreement. The gist of the contract was that HCMC guaranteed Gronski a net income of $400,000 in his first two years of practice. In addition, HCMC would provide an allowance of $200,000 to cover operating expenses. Thus, the subsidy totaled $600,0000. HCMC was to subtract Gronski's practice expenses from his gross cash collection each month and compare that to the net monthly income guarantee of $16,667. Any shortfall would be paid by HCMC to Gronski; any excess would be paid by Gronski to HCMC, up to the amount of advance monies paid by HCMC to Gronski. After two years, Gronski would repay any subsidy monies exceeding the $600,000 subsidy cap.

The contract also provided that HCMC would purchase medical equipment and office furniture for Gronski's practice. At the end of two years, Gronski would pay HCMC three-fifths of the cost of this equipment. Pursuant to this provision, HCMC purchased office furniture and equipment for Gronski totaling $79,059.50.

Finally, the contract included a clause requiring arbitration of disputes regarding the reasonableness of claimed professional expenses. In the event of litigation, the contract required the payment of costs and reasonable attorney's fees to the prevailing party.

Over the course of the contract period, several disagreements arose between the parties, one being whether Gronski could claim the depreciation of the office equipment supplied by HCMC as a professional expense under the terms of the agreement. Gronski requested arbitration, but HCMC refused, claiming that the clause only applied to disagreements regarding the reasonableness of office expenses. HCMC argued that the question regarding the depreciation of the office equipment was not whether it was a *reasonable* expense but was, instead, whether it was a deductible expense under the contract since HCMC claimed it owned

the equipment until the end of the contract term, when Gronski would begin his installment payments. At the end of the two-year period, Gronski began his monthly payments for the equipment but stopped these after he moved out of the state. HCMC sued for the remainder due on the equipment; Gronski admitted this debt but counterclaimed for set-off for the depreciation value of the equipment plus some other smaller expenses. The trial court found for HCMC on its suit, awarded set-off to Gronski, and ordered HCMC to pay costs and attorney's fees.

HCMC appeals the decision of the trial court, and the parties raise the following issues:

1. Was Gronski entitled under the terms of the contract to set-off for the depreciation value of the office furniture and equipment?

2. Under the contract terms, did Gronski prevail on the suit, entitling him to an award of costs and attorney's fees?

3. Under the contract terms, if Gronski prevails on appeal, is he entitled to an award of costs and attorney's fees?

The standard of review in this case is set forth in *Park Place Center Enterprises v. Park Place Mall Associates*, 836 S.W.2d 113 (Tenn. App. 1992). "The interpretation of a written agreement is a matter of law and not of fact. Therefore, our scope of review is *de novo* on the record with no presumption of correctness of the trial court's conclusions of law." *Id.* at 116 (citations omitted). *Park Place* also described the general principles of contract interpretation:

> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. In construing contracts, the words expressing the parties' intentions should be given their usual, natural and ordinary meaning. All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract. If the provisions are repugnant and cannot be reconciled, the first and principle clause is controlling and the subsequent provisions repugnant thereto are void and unenforceable.

*Id.* (citations omitted). Finally, "doubtful language in a contract should be interpreted most strongly against the party who drew or prepared it. This last rule is to be applied, however, only where other rules of construction fail to give certainty to the written expression." *Coble Sys., Inc. v. Gifford Co.*, 627 S.W.2d 359, 363 (Tenn. App. 1981) (citations omitted).

HCMC first contends that the contract did not entitle Gronski to count as an expense the depreciation of the equipment and furniture supplied to him by HCMC. The applicable clauses of the contract state:

ARTICLE II.

2

\*    \*    \*

> Net practice income is defined as gross collections . . . minus reasonable professional expenses (any expense the Internal Revenue Service (I.R.S.) considers as allowable operating expenses for Federal Income Tax purposes. It does not include personal income taxes and deferred compensation plans.).

\*    \*    \*

> (i)      The Physician agrees to pay for three-fifths (3/5) of the cost of capitalized equipment and furniture purchased by the Hospital located at the Physician's office after the initial twenty-four (24) month period. This obligation will be repaid by the Physician in equal installments over three (3) years at no interest. Equipment and furniture may be purchased by the Physician during the twenty-four (24) month period. In the event all subsidies are not repaid at the end of said 24 month period, the above stated repayment formula shall apply to the equipment and furniture purchased by the Physician.

The appendix to the contract includes the following example of how the Net Income Guarantee

Agreement was to be applied:

> 2.      Practice expense . . . includes any expenses the IRS considers allowable for federal income tax purposes. Examples are: rent, utilities, maintenance, employee salaries, office supplies, malpractice, insurance, phones, accounting, etc. . . . It does not include personal income, personal income taxes or deferred compensation plans.

The trial court found that, upon signing the contract, Gronski became legally obligated to make payments for three-fifths the cost of the office equipment, these payments being deferred until the end of the contract term. This legal obligation made Gronski the owner of the equipment. As such, he was entitled to depreciate the equipment under § 179 of the Internal Revenue Code. 26 U.S.C.S. § 179 (1995). Both the contract and the appendix define a practice expense as any expense allowed by the I.R.S. for tax purposes. The contract and appendix both specifically except personal income taxes and deferred compensation plans from this definition but do not disallow depreciation of office furniture and equipment. Thus, the contract expressly provides that Gronski was entitled to claim the depreciation value of the office furniture and equipment purchased for him by HCMC.

HCMC argues that it purchased the equipment and remained the owner until the end of the contract term, when Gronski's duty to make payments began. HCMC notes the following language in the contract: "Equipment and furniture may be purchased by the Physician during the twenty-four (24) month period. In the event all subsidies are not repaid at the end of said 24 month period, the above stated repayment formula shall apply to the equipment and furniture purchased by the Physician." HCMC contends that this language refers to the equipment bought

3

for Gronski by HCMC and that it gave Gronski the right to purchase that equipment before the end of the contract term. HCMC maintains that, unless Gronski exercised this option, no legal purchase would be made until Gronski's monthly payments became due. Gronski argued, and the trial court found, that this contract clause gave Gronski the right to purchase office equipment on his own, apply the purchase cost to the net income guarantee as a practice expense, and then repay the purchase cost to HCMC if, at the end of the contract term, all subsidies had not been repaid. The interpretation of the clause at issue adopted by the trial court gives ordinary meaning to the contract language and is consistent with the rest of the contract.

HCMC also contends that Gronski could not claim depreciation of the equipment under the Internal Revenue Code. In support of this position, HCMC cites *Miller v. Commissioner*, 68 T.C. 767 (U.S. Tax Ct. 1977). While *Miller* is not precisely on point, it does involve a party trying to claim depreciation on property for tax purposes where the party holds "only the barest of legal titles." *Id.* at 778. The tax court stated that "[t]he critical question therefore is whether the taxpayer made a capital investment in property. If a taxpayer has no capital investment in property, he has no right to depreciation or amortization deductions with respect to the capital asset." *Id.* at 775. HCMC relies on this case because, while Gronski was legally obligated to purchase the furniture in two years, he had no actual capital invested in it at the time he claimed depreciation value.

Yet there are several distinguishing factors between *Miller* and the instant case. In *Miller*, the taxpayer had purchased only the rights of payment in an existing leaseback arrangement set up to finance a construction project for the benefit of a New York college. *Id.* at 774-75. He had not taken over any of the obligations associated with the property, the college enjoyed the use of the property during the leaseback term, and at the end of the leaseback term, the college, if not in default, would become the owner of the property. *Id.* at 777-78. In contrast, Gronski accepted a legal obligation to pay three-fifths the cost of the equipment in a deferred payment plan, used the equipment himself, and would be the undisputed property owner after all payments were made. *Miller* does not mandate reversal of the trial court's decision.

The contract provides that practice expenses include those expenses allowed by the I.R.S. for tax purposes, and this is reiterated in the appendix. At trial, Gronski's expert testified that depreciation of the equipment would be allowed by the I.R.S. under 26 U.S.C.S. § 179, which

4

reads: "A taxpayer may elect to treat the cost of any section 179 property as an expense which is not chargeable to capital account. Any cost so treated shall be allowed as a deduction for the taxable year in which the section 179 property is placed in service." 26 U.S.C.S. § 179(a) (1995). For depreciation on office furniture and equipment to be deductible, the property must be "acquired by purchase for use in the active conduct of in [sic] a trade or business." 26 U.S.C.S. § 179(d)(1) (1995). "Purchase" is defined in the Code and the Regulations as "any acquisition of property." 26 U.S.C.S. § 179(d)(2) (1995); 26 C.F.R. § 1.179-4(c)(1)(i) (1996). The property must be placed in service. 26 U.S.C.S. § 179(a) (1995); *see Crawford v. Commissioner*, 65 T.C.M. (CCH) 2540, 2549 (U.S. Tax Ct. 1993). "The term *placed in service* means the time that property is first placed by the taxpayer in a condition or state of readiness and availability for a specifically assigned function, whether for use in a trade or business, for the production of income, in a tax-exempt activity, or in a personal activity." 26 C.F.R. § 1.179-4(e) (1996). Gronski satisfies the criteria of § 179. He purchased the property when he signed the contract making him legally liable to pay for it, he acquired it for his medical practice, and he put it into service upon acquisition. The depreciation of the equipment would be allowed by the I.R.S. for tax purposes, and the contract expressly includes such allowable expenses in the definition of practice expense. Moreover, HCMC carried the equipment on its books as an account receivable from Gronski. HCMC explained that this was the only way HCMC, as a nonprofit hospital, could gain any tax benefits from the equipment because it could not claim the depreciation. Regardless, the fact that HCMC carried the equipment as an account receivable on its books indicates that Gronski was legally obligated to pay for the equipment and was, for both tax purposes and practice expense purposes, the owner. Consequently, we affirm the decision of the trial court on this issue.

The trial court found that, contrary to HCMC's contention, HCMC had not paid Gronski in excess of its $600,000 subsidy cap. Our review of the record does not indicate that the evidence at trial preponderates against the trial court's finding.

HCMC also appeals the trial court's award of attorney's fees to Gronski, pursuant to the terms of the contract. The contract states:

ARTICLE XII.

Attorney's Fees

5

> In the event that suit is brought regarding the provisions of this Agreement or the enforcement thereof, the prevailing party shall be awarded its costs of suit and reasonable attorney's fees as part of any judgment rendered therein.

HCMC argues that it instituted the suit and is a prevailing party insofar as it received judgment against Gronski for the debt owed on the equipment. It acknowledges that Gronski prevailed on his countersuit. Consequently, HCMC contends that both parties prevailed and each party should bear its own costs and attorney's fees. Gronski admitted his debt in his answer to the complaint and argues that the only issue at trial was whether he was due a set-off against HCMC. He notes that he prevailed on the set-off issue and was awarded more money than was HCMC. Therefore, Gronski maintains that he is the prevailing party and was properly awarded costs and attorney's fees under the contract.

Because there was no genuine issue regarding Gronski's debt to HCMC and Gronski prevailed on his counterclaim against HCMC and was awarded an amount which exceeded the amount he admittedly owed HCMC, we affirm the decision of the trial court awarding attorney's fees and costs to Gronski.

We also find that Gronski is the prevailing party on appeal and award him costs and reasonable attorney's fees for defending the appeal, pursuant to the terms of the contract.

The judgment of the trial court is affirmed on all issues. Costs and reasonable attorney's fees are assessed against HCMC, for which execution may issue if necessary. We remand the cause to the trial court for a determination of the amount of the costs and attorney's fees on appeal.

_____
**HOLLY KIRBY LILLARD, J.**

_____

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**HEWITT P. TOMLIN, JR., SR. J.**

6